## HENRY OELRICKS AND GUSTAV W. LURMAN, PLAINTIFFS IN ERROR, *v.* BENJAMIN FORD.

Where there was a written contract for the delivery of a certain number of barrels of flour at a given price, to be delivered within a named time at the seller's option, and evidence was offered by the purchaser of an usage existing, that a margin should be put up, the court below was right in refusing to allow this evidence to go to the jury, because it was too indefinite and uncertain to establish an usage.

And, moreover, if the usage existed, the proof would have been inadmissible to affect the construction of the contract, in which there was no ambiguity or doubt on the face of the instrument.

Any parol evidence of conversations or of an understanding of the parties that the contract was made subject to such an usage, was inadmissible, as these were merged in the written instrument.

The contract was made in Baltimore, between the purchasers and an agent of the seller, the seller residing in New York. The latter, and not the agent was bound to bring the suit, as the character of the agent was disclosed on the face of the contract. There is no distinction in the principle governing agencies of this description between the cases of a home or foreign principal

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Maryland.

It was an action of assumpsit brought by Ford, a citizen of New York, against Oelricks & Lurman, merchants of Baltimore, upon a contract in writing, made by the defendants, who agreed to purchase from Bell, agent for Ford, ten thousand barrels of flour, deliverable at seller's option at the prices

and upon the terms stated in the contract, which is fully set forth in the opinion of the court, and need not be repeated. Ballard was the broker who made the contract on behalf of Oelricks & Lurman.

The evidence given upon the trial by the plaintiff and defendants was very voluminous, and was both oral and written.

The points of law which arose in the case will be manifest from the prayers to the court offered by the counsel for the plaintiff, and from the instructions to the jury given by the court, which were as follows:

1. That the evidence in this case is insufficient to authorize the jury to find that there is an usage in the city of Baltimore, with regard to contracts for the sale of merchandise to be delivered at a future time, by which the defendants were authorized to annul the contract bearing date the 7th November, 1855, given in evidence, upon the failure of the plaintiff to put up a margin in money, as security for its performance, in compliance with the demand contained in the letter of the witness, Ballard, to J. W. Bell, of the 21st December, given in evidence.

2. That such an usage, if found by them to exist, is invalid, and not binding, because it is unreasonable.

3. That evidence of such an usage, if it should be established by competent evidence, and be held reasonable by the court, is inadmissible in this case, because it contradicts or waives the written contract dated the 7th November, 1855, given in evidence.

4. That if the jury find, that before the 21st day of December, 1855, J. W. Bell had left the city of Baltimore without authorizing any person to represent him in his absence, and have never since returned, the letters of the witness, Ballard, of the 21st and 24th December, 1855, left at the former place of business of said Bell, as proved by the said Ballard, did not affect the plaintiff with notice of the demand for a margin mentioned in said letters, even if, under any usage or contract, the defendants were authorized to make such demand.

5. That if the jury find that the witness, Ballard, reduced the said contract, dated the 7th November, and given in evi-

*Oelricks et al. v. Ford.*

dence, to writing, at the request of the defendant, Lurman, and that said Ballard signed two copies of the same, and procured the approval of the defendants, and of Bell, as agent of the plaintiff, to the same, by their signatures thereto, and delivered one of the said contracts to the defendants, and the other, which has been given in evidence by the plaintiff, to said Bell, and shall further find all this was done on the 23d November, 1855, after the interview at the Exchange between the defendant, Lurman, and the said Bell, spoken of by the witness, Ballard; and shall also find that, at said interview, the defendant, Lurman, declined to have the clause inserted in said contract having reference to putting up a margin; and if the jury find that said Bell, upon the 12th and 15th December, delivered 2,000 barrels of flour under said contract, which were received by the defendants, and paid for by them; and if the jury shall further find that the plaintiff offered to deliver, and was prepared and willing to deliver, the balance of the 8,000 barrels contracted to be delivered under said contract, at the times and at the prices testified to by the witnesses of the plaintiff, and that the defendants refused to receive the same, then the plaintiff is entitled to recover in this suit the difference between the price of flour mentioned in said contract ($9.25) and the market value of the parcels of flour tendered by the plaintiff on the days on which they were respectively tendered, with interest thereon from such periods, respectively. But the court rejected the prayers of the plaintiff, and each of them, and, in lieu of them, granted the following instructions to the jury:

1. If the jury shall find, from the evidence in this case, that the defendants entered into the written contract dated the 7th of November, 1855, which has been offered in evidence, and that the plaintiff offered to deliver to the defendants in the months of January and February, 1856, eight thousand barrels of flour, in pursuance of the stipulations of said contract, and in the mode therein pointed out; and that, when said offers were made by the said plaintiff, he had the requisite amount of flour to comply in good faith with said offers, and could have delivered the same, if the defendants had been

willing to receive the same, and shall further find that the defendants wholly refused to receive and pay for said flour according to the terms of said contract, then the plaintiff is entitled to recover such damages as the jury may find from the evidence he has suffered from said refusal of defendants to execute the said contract on their part.

2. The rule of damages in this case is the difference between the contract price of the flour and the market value in the city of Baltimore of the same on the several days on which the plaintiff offered to deliver the same in accordance with the provisions of said contract, with interest on such sum in the discretion of the jury. To the granting of which instructions the defendants prayed leave to except, and upon this exception the case came up to this court.

It was argued by *Mr. Frick* and *Mr. Benjamin* for the plaintiffs in error, and by *Mr. Brown*, upon a brief filed by himself and *Mr. Brune*, for the defendant.

The reader will perceive, from the prayers and instructions, that the two principal points in the case were: 1. Whether the evidence to support an usage was sufficient to authorize the jury to infer an usage; and 2. Whether Ford could maintain the action.

The decision of the first point necessarily involved an examination of the evidence, which, as before remarked, was very voluminous, and a summary of which is given in the opinion of the court. It would require a prolonged statement to follow the counsel through this examination, but the points can be given as follows:

I. That all the evidence in the cause ought properly to have been submitted to the jury, and was sufficient, if they believed it, to establish the existence of an usage, among a certain class of flour dealers in the city of Baltimore accustomed to deal in "time contracts," under which, either the buyer or seller might demand security, by way of a margin to be put up by both, whenever the faithful performance of such a contract should be considered doubtful by either party  The amount

of such margin to be reasonable, according to the judgment of other merchants in the same business, and the contract to be cancelled, upon a failure to put it up.

II. That there was evidence in the cause, which ought properly to have been submitted to the jury, tending to show, that both the agent of the plaintiff below, and the defendants, made all their "time contracts" for flour, with reference and subject to such an usage; and that each party knew such to be the special custom of the other's business, when the "time contract" in evidence was entered into; and that the contract was specially made with reference and subject to such an usage.

III. That the usage, as proved, was a reasonable and lawful usage.

IV. That the effect of the usage was not to vary and contradict the contract, but to add to it something incidental and not inconsistent with it; and that, on this ground, proof of the usage was admissible, although the contract was in writing. And further, that the agreement for a "time" sale of flour on certain terms and for a margin, if required by either party, to secure it, being one and simultaneous, and a part only of the contract having been reduced to writing, on that ground, parol evidence of the residue was properly admissible.

V. That the agent of the plaintiff below had a right to contract in reference to the usage, so as to bind his principal; that the demand made for a margin, upon the agent, as proved, affected the principal with constructive notice of it; and that moreover there was evidence, proper for the jury, tending to show that the principal had actual notice of the demand, and in fact put his refusal to comply with it only upon the ground that there was no agreement for a "margin" in the written contract.

VI. That not only by the rules of legal presumption, but by necessary inference from the facts, the credit in this case was given exclusively to the agent, and the principal had no right of action on the contract; and that, even if this were otherwise, the rule of damages, as applied to the case, was erroneous.

Upon the last point, the following authorities were cited:

There is still another view of the case, showing error in the instruction given by the court below. This instruction announced the whole law of the case in the court's own language, and proceeded upon the ground that all the evidence offered to incorporate the usage into the contract was inadmissible. But it had the effect of withdrawing also from the jury all the evidence showing that the credit given in the transaction was to the agent, Bell, exclusively; and if that fact had been found, the defendants could not have charged the plaintiff upon the contract, and the plaintiff had therefore no right of action against them.

The rule laid down by Story as a presumption of law is, that "a foreign factor, buying or selling goods, is ordinarily treated, as between himself and the other party, as the sole contracting party; and the real principal cannot sue or be sued on the contract."

Story on Agency, sec., 423.

See also more specially sections 268, 290, and 400.

This is the established English doctrine.

Russell on Factors and Brokers, 288.

Livermore on Agency, vol. ii., p. 249.

Patterson *r.* Gandasequi, 15 East., 62.

Addison *v.* Gandasequi, 4 Taunt., 574.

Thompson *v.* Davenport, 9 Barn. and Cress., 78.

Smyth *v.* Anderson, 7 Mann. Grang. and Scott, 21, (62 E. C. L. R.)

The rule as stated by Story, in the four sections above quoted, has never been directly questioned in this country, except in one case, (Kirkpatrick *v.* Steiner, 22 Wendell, 244,) and then by a divided court.

It is reaffirmed by him (and that case examined) in note 1 to sec. 268, 5th edition of 1857, Story on Agency, and has been adopted in McKenzie *v.* Nevins, 22 Maine, (9 Shepley,) 143; Alcock *v.* Hopkins, 6 Cushing, 490; Merrick's Estate, 5 Watts and Serg., p. 14.

It is however an open question, whether the rule extends to the different States of the Union, as jurisdictions foreign to

each other. There are *dicta* in 22 Wendell, above referred to, to the effect that it does not. But the point has never been expressly made and decided that way.

On the contrary, in Newcastle M. Co. *v.* Red River R. R., 1 Rob. Louisiana R., p. 145, i⬤was directly held that it did apply to the different States, as a reasonable rule of presumption; and this would seem to be the true doctrine.

The term used in the books is principals "beyond seas;" and in construing those words in acts of limitation, they are held to refer to other States of this Union.

And so, bills of exchange are foreign bills when drawn by a party in one State, upon one in another State.

Story on Bills of Exchange, secs. 22 and 23.

Buckner *v.* Finley, 2 Peters R., 586.

So, both Scotland and Ireland are foreign to England for the purposes of this rule; and the reasons for the decision given in Story, 22, 23, and 2 Peters, in regard to bills of exchange, are similar to those in sec. 290 (Story on Agency) for the distinction made between domestic and foreign principals.

This rule, in the absence of any evidence on the question "to whom credit was given," creates a conclusive presumption of exclusive credit to the agent. It is of course liable to be rebutted. But the onus is on the principal. In this case, there is nothing to remove the weight of the presumption. On the contrary, the proof is all the other way.

(Evidence referred to.)

The counsel for the defendant in error made the following points:

I. The evidence is not sufficient to establish a general usage in Baltimore, by which either party to a contract to deliver flour at a future time is entitled to demand a margin or security of the other.

II. Such an usage, if proved, would not be valid and binding, because—

1. It is not ancient, reasonable, and certain. It opens the door to fraud and deception, and offers facilities to parties to escape from contracts which appear likely to occasion loss.

The cause for which a margin may be demanded, the amount of the margin and its character, whether money or anything else, the notice to be given, the place of deposit, and the manner in which the deposit is to be made, are not established with reasonable certainty.

2. Because the usage is not generally known in Baltimore.

3. Because an usage may explain the meaning of terms, but cannot avail to contradict or vary a written contract, as in this case is attempted to be done. To permit it to do so would be in violation of a settled rule of evidence and of the statute of frauds.

According to the testimony of Ballard, a witness for the defendants, and the only one who details the circumstances connected with the making of the contract, Bell and Lurman both said that they made their contracts with reference to the usage. Ballard then asked Lurman if he should insert about the margin in the contract. Lurman said, no; he was satisfied with Mr. Bell. Whereupon, the contract was drawn without referring to the usage. The previous conversation in reference to the usage is inadmissible in evidence, because it contradicts or varies the written contract in an important particular.

III. If the conversation with reference to the usage is of any avail at all, it can only bind Bell personally, and was intended only to do so, for Lurman expressly excluded it from the contract, and declared that "he was satisfied with Mr. Bell."

IV. The testimony of Ballard would be inadmissible to show the usage of Bell in reference to his own contracts, in a case like this, where it would vary or contradict a written contract, but it certainly cannot bind the plaintiff, who does not appear to have had any notice or knowledge thereof. Bell's clerk, (Manro,) who was well acquainted with his business, never heard of such a usage.

V. Even if the usage be proved, and be good in law and binding on the plaintiff, the defendants cannot avail themselves of it; because, in the letter of Ballard, the broker, in which the margin is demanded, it is expressly claimed on the

·ground of contract, and not of usage. And in the conversation on the 29th of December, 1856, which took place between Brown and Frick, the attorneys of the respective parties, the attorney of the defendants did not claim a right to security on the ground of usage, or make any reference to usage, but referred to the notice given by Ballard, for defendants, and took the ground that the contract had been rescinded · by defendants, because the plaintiff had not given security, as demanded by the notice. The plaintiff's attorney denied the right of the defendants-to demand any security, but said that the plaintiff was prepared to do anything required by the contract.· Nothing is said of usage until the letter of the 16th of · January, 1856, of the ·defendants, which mentions the usage ·to the plaintiff for the first time.

VI. Because the notice was not addressed by Ballard to the plaintiff, in New York, but was directed to Bell, in Baltimore, and sent to his counting-room after he had disappeared. The notice is dated 21st December, and required the money to be put up on the 22d, and the plaintiff never saw the notice until Christmas day following.

VII. Bell was not the plaintiff's agent for the purpose of receiving any such notice; and even if he were, a notice addressed to an absconding agent, and sent to his counting-room, and so sent, in fact, because the agent was known to have disappeared, is not sufficient to bind the principal. Bell's absconding put an end to his agency; and his disappearance, which was known to the defendants, was a sufficient notice to them of the fact. Good faith and fair dealing required that the notice should have been sent to the plaintiff in New York.

VIII. But the notice did not give the plaintiff reasonable time to comply, even if it had been communicated to him by telegraph, which it was not. It was left at Bell's counting-room before 12 M. on the 21st, and gave notice to deposit $5,000 in the Merchants' Bank of Baltimore on the following day. Flour had then fallen in price. The object of the defendants, undoubtedly, was to get rid of a losing contract, by giving a notice with which the plaintiff had neither time nor opportunity to comply.

IX. The defendants did not comply with their own notice—they state that on the 22d they would deposit $5,000 in the Merchants' Bank, and required Bell to do the same; but, in fact, they made no such deposit, and therefore under no circumstances could the plaintiff be required to do so.

X. The defendants had no right to require the arbitrary sum of $5,000 in cash to be put up on a contract, on which, at the time of the demand, they were, in fact, losers; and, therefore, no security at all was necessary.

XI. Nor had the defendants the right to select the Merchants' Bank of Baltimore as the place of deposit for the plaintiff, under the penalty of a cancellation of the contract.

XII. Nor had Ballard, the broker, who made the contract, any right to give a notice to put up a margin. The notice, which required immediate action and the deposit of a large sum of money, should have come from the defendants themselves.

XIII. The instructions of the court are correct, and cover the whole case. The rule of damages, as laid down, is sustained both by reason and authority.

XIV. Ford is principal, and has right to sue.

Green v. Kopke, 36 Eng. L. and Eq., 396.

Mahoney v. Kekule, 25 ib., 278.

Kirkpatrick v. Steiner, 22 Wend., 244.

Taintor v. Prendergrast, 3 Hill, 72.

3 Robinson Pr., 57.

2 Kent's Com. 8th ed., 630.

May, 818.

The following authorities are relied on to establish the propositions that the written contract cannot be varied or contradicted by the proof of usage; that the alleged usage is not properly proved, and if proved, is not valid.

United States v. Buchanan, 8 How., 83, 102.

Adams v. Otterback, 15 How., 545.

Brittan v. Barnaby, 21 How., 538.

Foley v. Mason, 6 Md., 50.

1 Greenleaf's Evidence, secs. 275, 278, 281, 284, 288, 292 293, 294.

Coxe *v.* Heisley, 19 Penn. State, 247.
Maury *v.* Insurance Co., 9 Met., 363.
Brown *v.* Stoddart, 10 Met., 381.
Adams *v.* Wordley, 1 Mees. and Wels., 374.
Magee *v.* Atkinson, 2 Mees. and Wels., 442.
Trueman *v.* Loder, 11 A. and E., 596.
Allen *v.* Dykes, 3 Hill N. Y., 597.
Hinton *v.* Locke, 5 Hill N. Y., 437.
Gross *v.* Criss, 3 Gratt., 262.
Macomber *v.* Parker, 13 Pick., 182.
Howe *v.* Mutual Ins. Co., 1 Sandf. Sup. C., 137.
Barlow *v.* Lambert, 28 Ala., 710.
1 Smith's Leading Cas., 307, 308, 309, margin; and see
   note of H. B. W. to p. 309.
Browne *v.* Gatliffe, 11 Cl. and Fin., 45, 70.
Ford *v.* Yates, 2 M. and Gran., 549.
Browne on St. of Frauds, p. 116, secs. 118, 448, 451.
2 Parsons on Contracts, 59.
3 Cranch, 31.
1 Met., 199.
4 M. and W., 140.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the district of Maryland.

The suit was brought by Ford against the defendants in the court below upon the following contract:

BALTIMORE, *November* 7, 1855.

For and in consideration of one dollar, the receipt whereof is hereby acknowledged, I have this day purchased from J. W. Bell, agent for Benjamin Ford, New York, for account of Oelricks & Lurman, Baltimore, ten thousand barrels superfine Howard Street or Ohio flour, deliverable, at seller's option, in lots of five hundred barrels, each lot subject to three days' notice of delivery, and payable on delivery, at the rate of nine dollars and twenty-five cents per barrel, viz:

2,000 barrels, seller's option, all December, 1855.
4,000    "        "        "        January, 1856.
4,000    "        "        ".        February, 1856.

10,000

.             L. E. BALLARD, *Broker*.

Approved:

             OELRICKS &. LURMAN.

The 2,000 barrels deliverable in December were delivered, accepted, and paid for, as per contract. The 4,000 barrels to be delivered in each of the months of January and February were duly tendered to the defendants, and payments demanded, and which were refused.

The only objection to the acceptance of the flour at the time tendered was the refusal of Ford to a demand made upon his agent to deposit $5,000 in one of the banks in Baltimore to secure the punctual delivery of the flour at the time mentioned. This demand for a deposit of money was denied by the plaintiff, on the ground that the contract contained no such stipulation.

After much testimony given by both parties on the trial, on the subject of a usage among the dealers in flour in the city of Baltimore to demand on time contracts a deposit of money, (or margin, as it is called,) and the right to rescind the contract if refused, the court charged the jury, that if they shall find, from the evidence, the defendants entered into the contract given in evidence, and that the plaintiff offered to deliver the flour therein mentioned according to its terms, and that when the offer was made, he had the requisite quantity of flour to comply with the contract, and could have delivered it if the defendants had been willing to receive it, and that they had refused, then the plaintiff was entitled to recover. The court further instructed the jury, that the rule of damages was the difference between the contract price of the flour and the market value in the city of Baltimore on the several days of the tenders, with interest on this sum, in the discretion of the jury. The jury found for the plaintiff.

One of the principal grounds of objection to the ruling of the court is, its refusal to submit the question of usage, which was the subject of evidence on the trial, to the jury.

The witnesses introduced by the defendants to prove the usage speak in a very qualified manner as to its existence, as well as to the instances in which they have known it to have been adopted or acquiesced in; and all of them admit they have no knowledge that it was general among the dealers. Some of them state that they recognised and had acted upon a custom in their own business, under which either party to the contract might require a margin to a reasonable amount, to be put up to secure the performance, and that the contract might be rescinded, if the party refused; that they could not say such was the general custom; that different persons have different customs; some consider there is such a usage, and some do not. One witness states that he had at all times in his business considered it to be a right which might be exercised by either party to a time contract, whenever he apprehended a risk; that if the party was solvent, he supposed there was no right to demand it; another, that in his business he had always considered such contracts to be subject to the right of either party to demand the margin; that the occasion of exercising it was rare, as contracts made by his house were made with responsible persons; that he did not know that this was a general usage in Baltimore. The broker who negotiated the contract for the defendants states that he considered it a clearly understood right of both parties to such contracts to demand a margin to a reasonable amount; that he entertained the belief, from conversations with various merchants on the subject; that he recollected but one instance where, when the demand was made, the margin was put up, which was a margin of twenty-five cents on the barrel in a contract for 500 barrels.

There were ten witnesses, flour merchants for many years in the city, who state that they knew of no such usage.

It will thus be seen, from a careful analysis of the evidence, that the defendants wholly failed to prove any general or established usage or custom of the trade in Baltimore, as claimed in the defence. Every witness called on their behalf fails to

prove facts essential to make out the custom in the sense of the law; on the contrary, most of them expressly disprove it. They express opinions upon the subject of a margin as a right to be exercised in their own business, but admit that it is not founded upon any general usage; and none of them speak of its having been claimed or exercised in his own business but in one or two instances. Whether a usage or custom of the kind set up existed in the trade in Baltimore, was a question of fact to be proved by persons who had a knowledge of it from dealing in the article of flour. Opinions of persons as to what rights they might exercise in their own business in respect to time contracts fall far short of any legal proof of the fact, especially when they admit that there was no general usage of the kind known to them.

Then, as to the precise limit or character of the custom claimed, the opinions of the witnesses are various and indefinite. The margin, they say, must be reasonable, but the pretended usage contains no rule by which a reasonable margin may be determined. It is said the amount may be referred to merchants. But there is no evidence that this is a part of the custom, or that any such mode of adjusting it ever occurred in the trade. Some of the witnesses state, that the margin must be a sum of money sufficient to make the party safe according to the state of the market. One states, that at the time the demand was made in this case for a margin, flour had fallen, and the price lower than the price in the contract; yet this, in his judgment, did not affect the right to make the demand, as the general opinion among dealers was, that the price would advance; that there were great fluctuations in the price, and that, in such a condition of things, a reasonable margin would depend upon the extent and character of the fluctuations, and upon the speculative ideas of the future value of flour.

The broker of the defendants, who purchased this flour, states his view of the reasonableness of the margin, which is the difference between the intrinsic value of the flour and its speculative value; by intrinsic value, he says he means the cost of the production; and by speculative value, the price at

which it was rating above its intrinsic value; and to a question what, in his opinion, would be a reasonable margin under the custom, when flour in the market was lower than the contract price, he answered, that he considered the demand reasonable in this case, because he believed flour was going up to twelve dollars per barrel. It would be difficult to describe a custom more indefinite and unsettled.

But, independently of the total insufficiency of the evidence to establish the usage, we are satisfied, if it existed, the proof would have been inadmissible to affect the construction of the contract. This proof is admissible in the absence of express stipulations, or where the meaning of the parties is uncertain upon the language used, and where the usage of the trade to which the contract relates, or with reference to which it was made, may afford explanation, and supply deficiencies in the instrument. Technical, local, or doubtful words may be thus explained. So where stipulations in the contract refer to matters outside of the instrument, parol proof of extraneous facts may be necessary to interpret their meaning. As a general rule, there must be ambiguity or uncertainty upon the face of the written instrument, arising out of the terms used by the parties, in order to justify the extraneous evidence, and, when admissible, it must be limited in its effect to the clearing up of the obscurity. It is not admissible to add to or engraft upon the contract new stipulations, nor to contradict those which are plain. (2 Kent Com., p. 556; 3 ib., p. 260, and note; 1 Greenl. Ev., sec. 295; 2 Cr. and J., 249, 250; 14 How., 445.)

Applying these principles to the contract before us, it is quite clear that the proof of the usage attempted to be established was inadmissible, and should have been rejected. There is no ambiguity or uncertainty in its terms or stipulations, and the condition sought to be annexed was not by way of explanation or interpretation, but in addition to the contract. The plaintiff agrees to deliver a given number of barrels of flour on certain days, at the price of $9.25 per barrel, in consideration of which the defendants agree to receive the flour, and pay the price. This is the substance of the written contract. But the

defendants insist, that besides the obligations arising out of the written instrument, the plaintiff is under an additional obligation to give security, whenever called upon, for the faithful performance; and this, by the deposit in bank of the sum of $5,000. The written instrument bound only the personal responsibility of the plaintiff; the parol evidence seeks to superadd, not a responsible name, as a surety, but in effect the same thing, a given sum of money. The parol proof not only adds to the written instrument, but is repugnant to the legal effect of it.

It was also urged on the argument that this contract was entered into between the defendants and the agent of the plaintiff, with the understanding at the time that it should be subject to the usage; but the answer to this is, that no such usage existed; and if it did, the terms of the contract exclude it. Any conversations and verbal understanding between the parties at the time were merged in the contract, and parol evidence inadmissible to engraft them upon it.

We are satisfied the court below was right in excluding the consideration of the evidence of the usage from the jury: 1, because the usage was not proved; and 2, if it had been, it was incompetent to vary the clear and positive terms of the instrument.

An objection has been taken on the argument, which was not presented to the court below, but which, it is insisted, is involved in the exception to the charge; and that is, inasmuch as it appears upon the evidence that the plaintiff was a resident of New York, and the contract made at Baltimore, in the State of Maryland, by an agent, the presumption of law is, that the credit was given exclusively to the agent, the principal being the resident of a foreign State; and hence, that the contract, in legal effect, was made with the agent, and not with the principal, and the former should have brought the suit.

This doctrine is laid down by Judge Story in his work on agency, and which was supposed to be the doctrine of the English courts at the time, and founded upon adjudged cases. (Story on Agency, sec. 268 and note; secs. 290, 423.) It did

not, however, at the time receive the assent of some of the courts and jurists of this country. (2 Kent's Com., pp. 630, 631, and note; 22 Wend., p. 224; 3 Hill., 72.) And the doctrine has recently been explained, and Judge Story's rule rejected, by the English courts. In the case of Green *v.* Kope, (36 Eng. L. and Eq. R., pp. 396, 399, 1856,) the court denied that there was any distinction, as it respected the personal liability of the agent, whether the principal was English or a foreigner. The Chief Justice observed: "It is in all cases a question of intention from the contract, explained by the surrounding circumstances, such as the custom or usage of the trade when such exists. No usage," he observes, "was proved in the present case, and I believe none could have been proved." Again, he observed: "It would be ridiculous to suppose that an agent, for a commission of one-half per cent., is to guaranty the performance of a contract for the shipment of 1,000 barrels of tar." The case was finally put upon the intent of the parties, as derived from the construction of the contract, and which was, that the defendant contracted only as agent, and not to make himself personally liable. Willes, J., doubted if evidence of custom was admissible to qualify the express words of the contract, so as to make the agent liable.

(See also 14 Com. B. R., p. 390; Mahoney *v.* Kekule, 5 Ellis and Black, pp. 125, 130.)

In the present case, the broker's note, and which is approved by the defendants, affixing the firm name, is too clear upon the face of it to admit of doubt as to the person with whom the contract was made. The purchase is from "J. W. Bell, agent for Benjamin Ford, of New York," and the case shows that Bell had full authority. The name of the principal is disclosed in the contract, and the place of his residence, as the person making the sale of the flour, through his agent. This fixes the duty of performance upon him, and exonerates the agent.

The judgment of the court below affirmed.