LOUIS C. WALKER, PLAINTIFF IN ERROR, v. JOHN HAN-
COCK MUTUAL LIFE INSURANCE COMPANY, DEFEND-
ANT IN ERROR.

Argued July 1, 1910—Decided March 6, 1911.

1. The right of a principal to terminate the relation between him
   and his agent without liability to the latter, depends on the
   terms of the contract, and if the agent is discharged in violation
   of those terms, he has a right of action for the wrongful dis-
   charge.
2. In every contract of service, including that of agency, it is
   implied that the employe shall obey the lawful orders of the
   employer, at least so far as they are reasonable and not merely
   arbitrary or capricious.
3. The duty of an agent to account involves the right of the prin-
   cipal to assure himself that the accounts are proper and correct,
   and measures taken in good faith by the principal to secure a
   proper accounting and to assure himself of its propriety are not
   in violation of the contract between principal and agent,
   although they may not be within its express terms.
4. An agent to solicit life insurance and collect premiums refused
   to permit an inspector of his company to do what was neces-
   sary for an ideal inspection. *Held*, that such refusal was suffi-
   cient cause for his discharge.
5. An agent to solicit life insurance and collect premiums was for-
   bidden to collect by mail by a rule adopted after he entered upon
   the employment, of which he had notice. *Held*, that a violation
   of this rule by him justified his discharge.
6. An agent for a life insurance company was, under his agreement,
   entitled to "twenty per cent. on collections and nine times the
   first premium for writing it;" after he had written many policies
   he was discharged for cause. *Held*, that he was not entitled to
   damages because the company prevented him from collecting
   premiums that became due after his discharge.

On error to the Supreme Court.

For the plaintiff in error, *Riker & Riker*.

For the defendant in error, *McCarter & English*.

The opinion of the court was delivered by

SWAYZE, J.    The plaintiff was employed by the defendant
in 1885 as an agent to solicit policies of life insurance.    His

own account of the contract, which was an oral one, is that he agreed to go to work for the company upon condition that he was allowed to retain his "debit" as long as he could collect it and as long as he was healthy and able to work. The "debit" was the amount of premiums on policies which the plaintiff was entitled to collect. His compensation was to be twenty per cent. on collections and nine times the first premium for writing the policies. Since the plaintiff was nonsuited, we must accept his statement of the contract as true. He continued to work under the contract for nineteen years and wrote many policies, so that his debit increased to a considerable sum per week on which he was entitled to twenty per cent. on collection of the premiums. In 1904 the defendant undertook to make an inspection of his work. This consisted in the inspector going with the plaintiff on his rounds to collect premiums and checking up the books that the policyholders held, in which their receipts were entered with the accounts rendered by the plaintiff. The plaintiff now claims that he was informed that the only object was to ascertain the addresses of the policyholders, but he admits that he knew from his own experience that, in fact, an inspection was in progress. The inspection continued for about two weeks without objection on plaintiff's part, and was about nine-tenths completed when a controversy arose. The inspector insisted on going over some of the ground again and the plaintiff refused to permit it, and was thereupon discharged. He admitted in his testimony that, to make an ideal inspection, it was necessary to do as the inspector wished. At the trial the defendant alleged, as an additional justification for the discharge, the fact that the plaintiff had received premiums by mail from policyholders, contrary to a rule of the company adopted after the contract between plaintiff and defendant had been entered upon. The fact is conceded, and the claim of the plaintiff is that the defendant had no right to adopt such a rule since it altered the contract.

It is elementary that a principal has the power to revoke his agent's authority at any time except where it is expressly made irrevocable, or where it is coupled with an interest, or

given for a valuable consideration or as part of a security. A distinction must be made, however, between the principal's power to terminate the authority of the agent to act for him and bind him to third persons, and the right of the principal to terminate the relation without liability to the agent. As between the principal and agent the right depends on the terms of the contract, and if the agent is discharged in violation of those terms, he has a right of action for the wrongful discharge. In this respect the contract and the rights thereunder are analogous to the ordinary contract between master and servant. In every contract of service certain terms are implied. Illustration of terms implied in a contract of agency are to be found in the notes in 31 *Cyc.* 1301, 1302. In every contract of service it is implied that the employe shall obey the lawful orders of the master, at least so far as they are reasonable and not merely arbitrary or capricious. *Larkin* v. *Hecksher*, 22 *Vroom* 133. In *Lehigh Valley Railroad* v. *Snyder*, 27 *Id.* 326, the obligation to obey reasonable regulations was an express term of the contract. The question usually arises in cases between master and servant because the nature of that relation more frequently gives occasion for specific commands of the master, but the obligation of the agent to pursue his authority is essentially of the same character and is coupled with the duty to obey instructions. *Ev. Pr. & A.,* § 253. Another well-recognized duty of an agent is the duty to account for money of his principal received by him. This involves the right of the principal to assure himself that the accounts are proper and correct. Measures taken in good faith by the principal to secure a proper accounting and to assure himself of its propriety are therefore not in violation of the contract, although they may not be within its express terms. We see no reason to doubt that what the defendant required in this case was required in good faith and was reasonably necessary to the proper conduct of its business. The amount of the plaintiff's debit, for which he was accountable, was $261. This represented the total of premiums on some twenty-five hundred policies, which it required two weeks to collect. The plaintiff admits

that, to make an ideal inspection, it would be necessary to do just what the defendant's inspector asked to do; the plaintiff did not object to an inspection, for he permitted it without objection for two weeks; he drew the line, however, at an ideal inspection. We think it was for the company to determine how thorough an inspection it should make. It was entitled in behalf of its policyholders to be thoroughly satisfied of the correctness of the plaintiff's accounts. When the plaintiff refused to permit a thorough or ideal inspection, the defendant was justified in discharging him.

He concedes, also, that he violated the rule of the company forbidding him to collect premiums by mail. We think the method of collection also was a matter to be determined by the company in the exercise of its rights to control the conduct of its own business. Since this rule was adopted after he entered the company's employ, he was entitled to notice of it, but that he had. His violation of this rule also justified his discharge.

The fact that his discharge was justified does not, however, determine his right to maintain this suit. That depends upon the proper construction of the contract. *Willcox & Gibbs Sewing Machine Co.* v. *Ewing,* 141 *U. S.* 627. If his right to receive twenty per cent. on the collections was a part of his compensation for securing the business and writing the policy, the company could not deprive him of that compensation which he had already earned by preventing him from collecting the future premiums. Since upon this writ of error there can be no dispute about the terms of the contract, the construction is for the court. He says he was to get twenty per cent. on collections and nine times the first premium for writing it. A natural construction is that the payment for securing the business—"for writing it"—was to be nine times the first premium, and that the twenty per cent. was for services in collecting future premiums. In view of the small size of the premiums, this is not unreasonable. For a policy on which the premium was ten cents he would receive ninety cents for writing it and two cents for the collection of each premium after the first. We find nothing in the contract to

lead us to believe that the twenty per cent. commission was a part of the compensation for writing the policy. The plaintiff did not, in fact, collect the premiums that became due after his discharge, and the only remaining question is whether he is entitled to damages because he was deprived of the chance to earn this commission. Since that was pay for future services, the plaintiff's right depends on whether his discharge was rightful or wrongful. The authorities so hold. Perhaps the best considered case on the immediate question is *Phoenix Mutual Insurance Co.* v. *Holloway,* 51 *Conn.* 310. Holloway was a general agent who had been discharged for a shortage in his accounts. The contract gave him a right to renewal commissions and he claimed that this right continued notwithstanding his discharge. The contract provided for two ways of terminating the agency and two ways only: one was a sale of the agency by Holloway and the other was his death, in which latter case his representatives were to have the equitable value of the agency. The court held that it was an implied term of the contract that the company would not wantonly deprive him of the agency, and that a removal without cause would have entitled him to recoup damages to the amount of the equitable value of his agency. Since, however, he had been rightfully discharged, it was decided that he was not entitled to the renewal premiums. The language is worth quoting: "What are the consequences of such a removal from office? Nothing, say the defendants, except the mere right to obtain new insurance and issue new policies; as to all existing business and all renewals of existing policies, the agent takes the benefits of a continuance in office without any of its obligations, responsibility or labor. Such a doctrine we believe has no support in good reason or good law." With reference to Holloway's contention that he had a vested property interest in the commissions on future premiums, the court said: "Whatever right Holloway had was under his contract, but when that ceased to operate through his own misconduct there was no longer any foundation for his future right to rest upon. We do not mean to say that the right to the commissions must always depend on the right to collect

the premiums.  It is possible that the two things should have
an independent existence, as where an agent is removed with-
out fault on his part or for only a slight fault; but where he
is guilty of such misconduct as this case discloses, he deprives
himself of the right to set up his broken contract as a con-
tinuing one for his own benefit."

A similar view was taken by the Supreme Court of Minne-
sota.  *Jacobson* v. *Connecticut Mutual Life Insurance Co.,*
61 *Minn.* 330.  The present worth of the agent's renewal
commissions in that case was more than $11,000, but as it
was not simply part of his pay for securing the insurance,
but compensation for other services also in the prosecution
and preservation of the company's business, and as he was
discharged for cause, it was held that he was entitled to noth-
ing for the renewals.  The court said the case seemed a hard
one but the plaintiff took the chances of his contract as he
made it.

The North Carolina court has sustained the same view.
*Insurance Co.* v. *Williams,* 91 *N. C.* 70.  In Mississippi it
has been held under similar circumstances that the death of
the agent terminates the contract and his executor cannot
recover the value of the renewal commissions.  *Mills* v. *Union
Central Life Insurance Co.,* 77 *Miss.* 327.

The same result is reached in the cases where the contract
gives an express right to terminate it.  *Mutual Benefit Life
Insurance Co.* v. *Charles,* 17 *Fed. Cas.* 1073; *Ballard* v.
*Travelers Insurance Co.* (1896), 119 *N. C.* 187; *King*
v. *Raleigh,* 70 *S. W. Rep.* 251.  In *Ætna Life Insurance Co.*
v. *Nexsen,* 84 *Ind.* 347, the complaint averred that the agent
was dismissed without cause.  The court said: "Whether if
rightfully dismissed, he was entitled to commissions upon
renewal premiums is a question we need not and do not de-
cide."  In a later case the same court denied the agent
renewal commissions although his contract gave him renewal
commissions for five years on each policy in case the con-
tract should be terminated by either party; the agent, upon
a settlement, was found indebted to the company, the amount
was determined and he was retained in their service for a

year thereafter and then discharged. *Frankel* v. *Michigan Mutual Life Insurance Co.*, 158 *Ind.* 304.

The New York courts in an early case took a different view. *Hercules Mutual Life Assurance Society* v. *Brinker* (1879), 77 *N. Y.* 435. The authority of that case is weakened by the fact that three out of seven judges, including Folger, Andrews and Earl, dissented, and upon the original hearing there was no prevailing opinion. *Hale* v. *Brooklyn Life Insurance Co.*, 120 *N. Y.* 294, supports this view.

In *Stagg* v. *Connecticut Mutual Life Insurance Co.*, 10 *Wall.* 589, the agent was denied commissions on renewals where the contract allowed ten per cent. on the first premium and five per cent. on all subsequent renewal premiums so long as the agent continued with the company. In *Partridge* v. *Phoenix Insurance Co.*, 15 *Id.* 573, evidence of a custom to pay commissions on renewal premiums paid after the agent's discharge on account of policies issued through his agency was excluded. Indirectly this case negatives the idea of any property right in such renewals. *Wells* v. *National Life Assn.*, 99 *Fed. Rep.* 222, was a case of wrongful discharge.

The great weight of authority is against the right of the agent to commissions on renewal premiums paid after he has been rightly discharged. The cases where there was an express right to terminate the agency are in point since such an express right can be no stronger than the legal right arising out of the legal relations of the parties implied by the law. The result is in accordance with sound principles, since if the discharge is rightful, it must arise out of the agent's fault and he ought not to retain the benefit of a contract which he has himself broken.

We think the learned trial judge rightly ordered a non-suit and the judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, MINTURN, VREDENBURGH, CONGDON, JJ. 10.

*For reversal*—BERGEN, BOGERT, VROOM, JJ. 3.