WALLMAN et al. v. UNITED CASUALTY CO. et al.

Nos. 8703, 8704.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 21, 1944.

Decided Feb. 6, 1945.

Carl S. Kuebler, of Jersey City, N. J. (Carpenter, Gilmour & Dwyer and James D. Carpenter, Jr., all of Jersey City, N. J., on the brief), for appellant United Casualty Co.

Walter B. Gibbons, of Philadelphia, Pa. (Grossman & Nudelman, of Newark, N. J., on the brief), for appellant Mutual Benefit Health & Accident Ass'n.

Joseph Keane, of Jersey City, N. J. (Milton, McNulty & Augelli and Sidney B. Johnson, all of Jersey City, N. J., on the brief), for complainant-respondent Wallman, Inc.

Before MARIS and GOODRICH, Circuit Judges, and SCHOONMAKER, District Judge.

GOODRICH, Circuit Judge.

This was an action brought by Morris Wallman and Wallman, Inc. (hereinafter called Wallman) against United Casualty Company (hereinafter called United) and Mutual Benefit Health and Accident Association (hereinafter called Mutual) to recover for renewal premiums alleged to be due to plaintiff under a contract. The original agreement was made with Morris Wallman and subsequently assigned to Wallman, Inc., a corporation solely owned by him.

The case is in the federal court solely upon diversity of citizenship of the parties to the litigation. The operative facts seem to all have occurred in New Jersey. While United executed the agreement appointing Wallman as agent at its home office in Westfield, Massachusetts, the agreement was, subsequently, completed by Wallman's affixing his signature to it and this took place in New Jersey. It is a case, therefore, where the federal court is concerned solely with the problem of

state law and in which the state authorities control. However, neither the cases cited to us by counsel nor those which we have found independently reveal any New Jersey decision even remotely bearing upon the point except Walker v. Hancock Mut. Life Ins. Co., 1911, 80 N.J.L. 342, 79 A. 354, 357, 35 L.R.A.,N.S., 153, Ann.Cas. 1912A, 526. In that decision the court, through Swayze, J., formulated the New Jersey rule after examination of the authorities generally and we shall do the same.

In January of 1939 United entered into a contract with Wallman under which Wallman was appointed State Manager for Hospital Expense Indemnity Policies and policy-issuing and counter-signing agent in the State of New Jersey. Stipulated rights of compensation were provided for which were subsequently modified by later agreements. The agent was to receive a percentage of the first basic premium of the Hospital Expense Indemnity Policy and there was provision for a renewal commission. By the terms of the contract this compensation was payable "during the continuance of this Agreement". The agreement did not carry with it any time limitation. In paragraph 10 there were provisions whereby the agent could be discharged for cause and there was a sentence which provided: "This agreement shall terminate if for any reason the United Casualty Company shall cease to sell Hospital Expense Indemnity Policies in the State of New Jersey."

Wallman entered upon the business of selling the policies mentioned. United was a small company and the type of insurance into which this venture took it was one which had evidently not been sufficiently tried out to remove speculative elements from the enterprise. In any event, it is found as a fact that in June of 1940, because of difficulties with the Departments of Banking and Insurance of the States of New Jersey and Massachusetts, United determined to retire from the Hospital Insurance business and entered into an agreement with Mutual effective July 1, 1940, whereby United sold and transferred to Mutual its Hospital Expense Insurance business consisting of Hospital Expense Indemnity Policies, including good will.

As pointed out above, the contract between United and Wallman contained a provision that the agreement should be terminated if United ceased to sell Hospital Expense Policies in New Jersey. We are further assisted, on this phase of the matter, by an express finding by the District Court to which neither party has objected.

"7. That United, under the agreements, had a right to terminate the Wallman contract, if it ceased to sell Hospital Expense Indemnity policies in the State of New Jersey; that United did cease to sell said policies, subsequent to a direction from the Department of Banking and Insurance, and did terminate the Wallman contract as of July 1st, 1940."

What rights has Wallman after the termination of the contract made in accordance with its terms? The generally accepted rule is that an agent's right to commission on renewal premiums depends upon the contract existing between the agent and the insurance company. The many cases considering the various phases of litigation between insurance company and agent are collected and classified in two elaborate notes in 79 A.L.R. 475 and 136 A.L.R. 160. It is contended on behalf of Wallman that his right to receive commissions on renewal premiums became a fixed property right as soon as he sold a policy in the first instance and that, therefore, when United transferred its business to Mutual and policies originally sold by Wallman for United were renewed with Mutual, Mutual's interest therein was for the premium values less the commissions which belonged to Wallman.[1] We do not find anything to support this view in the contract which the parties have made. Mr. Justice Swayze, in Walker v. Hancock Mutual Life Insurance Company, supra, states as the court's conclusion in that case that: "The great weight of authority is against the right of the agent to commissions on renewal premiums paid after he has been rightly discharged." That language is applicable here and is supported by the express finding made by the District Court, cited above, to the effect that Unit-

---

[1] Cf. language in General American Life Ins. Co. v. Roach, 1937, 179 Okl. 301, 65 P.2d 458, where the contract provisions indicated commissions were to be treated as agent's eo instante upon the policy's issuance. Cf. also Schrimplin v. Farmers' Life Ass'n, 1904, 123 Iowa 102, 98 N.W. 613, where the transferee company received renewal premiums not only with notice of the Agent's contract with its transferor but with the promise to pay his commissions.

638

ed had a right to terminate the Wallman contract and did so as of July 1, 1940. The conclusion that Wallman has no rights either as against United or Mutual is further strengthened by the result reached in other decisions on facts comparable to those in the instant case. Layton v. Illinois Life Ins. Co., 7 Cir., 1936, 81 F.2d 600, certiorari denied 1936, 298 U.S. 681, 56 S.Ct. 949, 80 L.Ed. 1401; Moore et al. v. Security Trust & Life Ins. Co., 8 Cir., 1909, 168 F. 496, certiorari denied 1910, 219 U.S. 583, 31 S.Ct. 469, 55 L.Ed. 346; People ex rel. Palmer v. Peoria Life Ins. Co., 1941, 376 Ill. 517, 34 N.E.2d 829, 136 A.L.R. 151; certiorari denied Harwick v. O'Hern, 1941, 314 U.S. 688, 62 S.Ct. 300, 86 L.Ed. 551; North Carolina State Life Insurance Co. v. Williams, 1884, 91 N.C. 80, 49 Am.Rep. 637.

■ A subsequent amendment to the agency agreement between Wallman and United provided that Wallman was to pay sub-agents' commissions "out of the said compensation paid to the said Morris Wallman" and United's contract with such sub-agents provided that they were to be paid upon renewals for one year after the termination of their agency. This does not indicate that Wallman also was entitled to renewals for one year after the termination of his agency. His contract with United contained no such provision.[2] Moreover, respondent was not a party to any sub-agent's contract with United if we are to judge all such contracts by the only one submitted in evidence. Nor could any sub-agent become a party to the present action instigated by Wallman, since he obligated himself to pay sub-agents only from commissions actually paid to him by United.[3]

The learned District Court found as a fact that the agreement between Wallman and United is silent "as to for how long a period Wallman is entitled to renewal commissions after the termination of the agreements". Over objection, evidence was received of custom concerning an agent's rights to renewal commissions. Upon this evidence it was found: "That the custom in the insurance field concerning the payment of renewal commissions is that the party procuring the issuance of the policy in the first instance is entitled to renewal commissions as long as that policy is renewed."

■ We think the evidence was incorrectly received. The provisions of the agreement are clear to the effect that the contract was terminated when the company ceased to sell those policies in New Jersey. It was not a case, therefore, where: "Proof of a special usage or custom is the 'key to the contract' without reference to which the intent of the parties can not be ascertained." Manhattan Overseas Company, Inc. v. Camden County Beverage Company, 1940, 125 N.J.L. 239, 244, 15 A.2d 217, 219 affirmed 1941, 126 N.J.L. 421, 19 A.2d 828. The case is not, therefore, an appropriate one for adding to the contract by evidence of custom. Tilley v. County of Cook, 1880, 103 U.S. 155, 162, 26 L.Ed. 374; Partridge v. The Insurance Company, 1872, 82 U.S. 573, 579, 21 L.Ed. 229; Insurance Companies v. Wright, 1863, 68 U.S. 456, 470, 17 L.Ed. 505; Oelricks et al. v. Ford, 1859, 64 U.S. 49, 63, 16 L.Ed. 534; 2 Jones on Evidence, 4th Ed., § 465; 4 Wigmore, Evidence, 3d Ed., § 2440.

We have, however, examined the testimony of the witnesses who presented the evidence, even though the parties did not include it in their appendices. It seems to us not to be at all clear on the question of the custom claimed as applied to the type of insurance here involved. Furthermore, it proceeds upon a theory of property rights in insurance contracts and renewals thereof which is contrary to the rule stated by the authorities relied upon in this opinion.

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

[2] Finding of Fact 9. "That the agreement between Wallman and United are silent as to for how long a period Wallman is entitled to renewal commissions after the termination of the agreements."

[3] Under date of August 15, 1939, it was agreed: "2. That the same compensation receivable by the said Morris Wallman under an Agency Agreement dated January 2, 1939, shall be paid to him on the above-mentioned business in the manner set forth in said Agreement; provided, however, that out of said compensation paid to the said Morris Wallman he agrees to pay to other New Jersey agents the commissions allowed them for business submitted through the said Morris Wallman's office."