Robert M. BOYCE, Plaintiff,

v.

The MERCHANTS FIRE INSURANCE CO., Defendant.

Civ. No. 8490.

United States District Court
D. Connecticut.

March 28, 1962.

**312**

John L. Calvocoressi, Pelgrift, Dodd & Stoughton, Hartford, Conn., for plaintiff.

Bruce W. Manternach, Robinson, Robinson & Cole, Hartford, Conn., for defendant.

ANDERSON, Chief Judge.

The plaintiff, Robert M. Boyce, has been in the insurance business since 1914. He is 67 years old and is practically stone deaf. About May 1, 1941 the plaintiff and the defendant entered into a written agreement whereby the plaintiff was appointed state agent for the defendant. After reciting that the plaintiff was defendant's "State Agent", the agreement set out the territory over which Boyce had jurisdiction, as state agent, and provided for his compensation. It also stated that the "agreement shall continue from year to year unless terminated by either party, the right of resignation or removal at any time being recognized by both parties, and become effective not less than ninety (90) days after written notice of such termination is received." Boyce also accepted appointment as a "local agent" of the defendant by entering into a written contract with the defendant on June 10, 1941.

The parties continued under the relationships created by the two contracts until the latter part of March, 1960, when the defendant informed Boyce that the two contracts were being terminated. The complaint alleges no violations of the contracts during the period from 1941 until the time of their termination in 1960. However, in an affidavit in opposition to defendant's motion for summary judgment, Boyce averred that defendant had never paid the office expenses set out in the state agency agreement. With the exception of this statement, which was made to illustrate that the written agreement did not control the relationships between the parties, no demand is made for damages allegedly resulting from violations of the contract prior to its termination.

As part of his duties as state agent, Boyce recruited local agents who entered into contracts with Merchants similar to Boyce's own local contract which was offered in evidence at plaintiff's deposition. These contracts were signed by the local agent and by Boyce as representative of the defendant. While under the supervision of Boyce as state agent, it is clear from the contracts that the local agents were not Boyce's subagents but were directly employed by the defendant. Under the contracts, expirations were to remain the property of the local agents upon termination of a local agency contract.

By letters dated March 29, 1960 Boyce's state agency and local agency contracts were terminated. The local agency was terminated as of April 1, 1960, and Boyce has voiced no complaint as to its termination. The state agency was terminated on June 30, 1960, which was ninety days after notice to Boyce.

During the period between March 29th and June 30th, 1960, Merchants notified the local agents in Boyce's territory about the termination of the state agency and discontinued the agencies of a number of the local agents, recruited by Boyce, but retained approximately two-thirds of them as the "agency plant." The defendant admits that, after notification to Boyce of the termination of his state agency, it had contacted those thus retained about April 1, 1960 with regard to their remaining as agents. The defendant has paid Boyce no commissions for policies written by it after June 30, 1960.

Out of the defendant's motion for summary judgment and a motion by the plaintiff for leave to file additional affidavits, there have emerged two questions for decision by the court:

First: does the material in the plaintiff's countering affidavit, filed at or prior to the hearing on the motion for summary judgment, qualify to create a genuine issue of material fact?

Second: should the plaintiff be afforded the opportunity to file additional affidavits for the purpose of modifying the clear terms of the contract by showing custom and usage at variance with those terms?

The plaintiff objects to the disposition of this case by summary judgment because of his claim that there exists a genuine issue as to a material fact, evidenced by plaintiff's own statement in his affidavit, that "said memorandum of agreement did not control the relationship between the defendant and me." The plaintiff's position is that either the written memorandum of agreement was superseded by an oral agreement between the parties or that parol evidence must be adduced to amplify the written memorandum and thereby present the full contract; and that in either event, the case is not in a posture suitable for disposition by summary judgment. Certain other "issues of fact" have been presented by plaintiff but, under the law of the case, they do not preclude utilization of the summary judgment procedure.

■ Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (emphasis added)

Paragraph (d) of the rule similarly speaks of material facts which "are actually and in good faith controverted." This language clearly shows that to defeat summary judgment there must appear an issue of fact not only material but genuine as well. As stated by Professor Moore:

"To defeat a movant who has otherwise sustained his burden within the principles enunciated above, the party opposing the motion must present facts in proper form—conclusions of law will not suffice; and the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicions." 6 Moore, Federal Practice (2d ed., 1953) ¶ 56.15 [3], p. 2131. (footnotes omitted) and see the authorities therein cited.

■ Here the plaintiff, in opposing the motion for summary judgment, submitted his affidavit averring that the written memorandum of agreement did not control the relationship between the parties. Plaintiff did not, however, present any evidence tending to show that the written agreement had been modified or superseded by any other agreement, either written or oral. On the contrary, some eight months prior to the time the motion for summary judgment was filed, plaintiff's deposition was taken by the defendant, during the course of which Boyce admitted that he had no recollection of any amendments to the written agreement, that the state agency contract had not been violated by defendant until its termination, that he developed the agency plant as part of what he con-

sidered to be his obligation under the working agreement, and that the "most important and most trying task" under the working agreement was to select local agents to represent the company. Although he insisted throughout the deposition proceedings that the written memorandum was a working agreement and not a contract, he never said what the real contract was. His testimony in this respect was nothing more than a conclusory characterization of the instrument by a layman, which he repeated in his affidavit.

■ It is not enough that one opposing a motion claims there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented. The movant has the burden of showing the non-existence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist.

"Nor is an opposing party, who has no countervailing evidence and who cannot show that any will be available at the trial, entitled to a denial of the motion for summary judgment on the basis of a hope that such evidence will develop at the trial.

"And although the moving party be unaided by any presumption, when he has clearly established certain facts the particular circumstances of the case may cast a duty to go forward with controverting facts upon the opposing party, so that his failure to discharge this duty will entitle the movant to summary judgment." (footnotes omitted) 6 Moore, supra, ¶ 56.15 [3], pp. 2129–2130; and Radio City Music Hall Corp. v. United States, 135 F.2d 715, 718 (2d Cir. 1943).

The defendant in the case at bar has shown that the agreement entered into by Boyce and Merchants on May 1, 1941 was the only such agreement between the parties. Plaintiff has failed to produce any evidential material which would serve to rebut that of the defendant, or give any explanation why such material is not presently available to him. It must, therefore, be concluded that there is no genuine issue of material fact as to the controlling agreement between the parties.

There remains the plaintiff's claim about custom and usage. Some time after the motion for summary judgment was heard, the plaintiff moved for permission to file additional affidavits which would serve to aid in interpretation of the contract. This additional evidence was intended to show usage and custom in the trade, both as it related to the necessity of showing good cause to terminate such contracts and as it concerned the appropriation of an "agency plant" by the insurance company. Decision on this latter motion was reserved.

■ Despite the fact that Rule 56(e) permits the filing of additional affidavits, only those which would provide competent and admissible evidence can be utilized in ruling on a motion for summary judgment. In the case at bar evidence of trade usage and custom is not admissible to vary the express terms of the contract. Where a contract is neither ambiguous nor lacking an essential provision, evidence of trade usage or custom is not admissible to add to or vary its terms. See Wallman v. United Casualty Co., 147 F.2d 636, 638 (3d Cir. 1945) and authorities there cited.

■ The plaintiff has referred to two Connecticut cases in support of his position that such evidence may be considered. The first of these is the early case of Kilgore v. Bulkley, 14 Conn. 362 (1841). In that case evidence of trade custom in New York City was admitted to prove the due date of a note. The note was by its terms made payable on a future date certain, which chanced to fall on a Sunday. The question then arose whether the note thus became payable on the preceding Saturday or on the following Monday. There was also a question whether the indorser was entitled to a three-day grace period by virtue of cus-

tom and usage. However, the case does not support the plaintiff's contention here. In 1841, payment could not validly be made on a Sunday. It, therefore, became necessary to determine through use of parol evidence, since the contract made no provision for such a contingency, on which alternate day the note did become payable. Furthermore, reference had to be had to the rules of the law-merchant inasmuch as the contract involved was a negotiable instrument. For these two reasons, the time of performance having become indeterminate and the applicability of the highly technical rules of the mercantile law, parol evidence was available to assist in the construction of the contract. But the case does not stand for the proposition that any contract is subject to interpretation by resort to evidence of trade usage or custom.

The second case relied on by the plaintiff is Cone v. Pedersen, 131 Conn. 374, 40 A.2d 274 (1944) in which oral evidence was admitted to describe the land which was the subject matter of the contract. But, as the court there said, the contract was "manifestly incomplete," there was lacking any description of the property. Authority and reason support recourse to parol evidence in such a situation.

Where, as here, the terms are expressly set forth in a written contract and they are not technical or ambiguous, or in need of explanation or interpretation, evidence of trade usage or custom is inadmissible to vary those terms. Glendale Woolen Company v. Protection Insurance Company, 21 Conn. 19 (1851); Smith & Co. v. Russell Lumber Co., 82 Conn. 116, 72 A. 577 (1909); Twiss v. Herbst, 95 Conn. 273, 111 A. 201 (1920); Trumbull Electric Mfg. Co. v. John Cooke Co., 130 Conn. 12, 31 A.2d 393 (1943); Downs v. National Casualty Co., 146 Conn. 490, 152 A.2d 316 (1959).

As there is no genuine issue of material fact present in the case at bar, it remains to evaluate the facts in light of the applicable law. The gravamen of the plaintiff's complaint is that he has been unjustly deprived of the continuing value of "his" agency plant. He has admitted that he is not entitled to the expirations in the policies written by the local agents, but insists that, inasmuch as he recruited and supervised these agents during his tenure as state agent, he is entitled to an overriding commission on the renewals written by the retained agents. He has also claimed that he is entitled to damages for defendant's competition with him during the period in which the contract was still in force; that is, recruiting local agents during the period April 1, 1960 to June 30, 1960. The defendant disputes this, but taking the evidence most favorable to the plaintiff, it must be considered as a fact that the defendant did negotiate with its local agents for continued employment at a time when the state agency contract was still in effect.

There is no basis of recovery in either of the plaintiff's claims. Both the state agency and local agency contracts make it indisputably clear that the local agents were agents of the defendant and not of the plaintiff. As such, the local agents were ultimately responsible to the defendant and the defendant was well within its rights in negotiating their continued association. Plaintiff's effort to analogize the relative rights and duties of the participants under these circumstances to those in a situation embracing an insured, an insurer and an agent will not stand examination. In the latter case, the insurer underwrites the policies sold by the agents and pays the agents a commission for placing the insurance with the insurer; but those who are insured are and remain the customers of the agent. In the case of a state agency, local agents are procured for the company, not for the state agency. The local agents are the agents of the company from the outset. The state agent, as shown by the two contracts, is not an employer but simply a supervisor. It is for this that he is paid and, when his duties as a supervisor are terminated, he retains no interest in the local agents. The defendant did not act improperly in offering continued employment to its

local agents at a time prior to the effective date of termination of the state agency contract.

There is little authority regarding plaintiff's theory of recovery; that is, that he is entitled to the continuing value of the agency plant created by him as part of his obligation under the state agency contract after that contract has been terminated. The cases which have come to the court's attention tend to refute the plaintiff's contention. The case most nearly in point is Schmieding v. American Farmers Mutual Insurance Co., 138 F.Supp. 167 (D.Neb.1955). The plaintiff in that case was a "district manager" for the defendant and had recruited his own former agents, as well as additional agents, for the defendant. The local agents contracted directly with the defendant rather than with the plaintiff. Plaintiff's district agency was terminated but the local agents were retained and plaintiff brought suit for damages resulting from the retention of "his agents" and for numerous other alleged wrongs. The district agreement specifically provided that no compensation would be paid after termination of the agreement. Plaintiff was denied recovery for retention of the local agents. In the course of its opinion the Court said:

> "The actions of defendant essentially complained of in this connection are two. \* \* \* The second is the persistence after October 1, 1950 of the employment by defendant of Nebraska agents secured for it by plaintiff, perhaps with special emphasis upon those agents who were representatives of [plaintiff] on January 1, 1950 and theretofore. The defendant's retention beyond the date of cancellation of agents recruited for it by plaintiff violated no right of plaintiff. It was simply a matter with which he was not properly concerned." 138 F.Supp. 167, 182–183.

Likewise in the case at bar the plaintiff is "not properly concerned" with the retention of local agents by the defendant.

In another case where the sub-agents contracted directly with the insurance company, the court held that the agent was not entitled to renewal commissions on policies written by them after the termination of his agency. Wallman v. United Casualty Co., supra. The agents' agreement was silent as to any such commission. In attempting to ascertain the applicable state law, the court was obliged to review the authorities generally. Its examination indicated that the right to renewal commissions depends upon provision for such in the contract, absent such provision the agent is not entitled to any. It should also be noted that the court ruled as inadmissible, evidence of trade custom in respect to renewal commissions, which was offered to explain the written agreement. Boyce stands in exactly the same position as the agent in the Wallman case. The court has not been referred to, nor has it been able to find, any Connecticut authority in derogation of the general law on the subject.

With regard to his claim that defendant wrongfully recruited his local agents during the period the contract was still in force, it is sufficient to note that the local agents had contracted with the defendant initially and not with the plaintiff. The facts here are substantially different from those in V. L. Phillips & Co. v. Pennsylvania Threshermen, Etc., 199 F.2d 244 (4 Cir. 1952) where the local agents had contracted with the state agent as well as with the defendant company. That case was an action for breach of an agency contract by use of expirations belonging to the state agent after the termination of the contract. The Circuit Court reversed a summary judgment which had been entered for the defendant company, finding that the case was controlled by the contract between the parties which provided that expirations were to remain the property of the agent upon termination of the contract. The parties here are likewise

bound by their contract, which gave Boyce no such right.

The plaintiff's rights are to be found within the four corners of his state agency contract which clearly provides for compensation in return for performance of duties of a supervisory nature. Indeed the last sentence of the contract describes his duties as those "pertaining to a supervisory agent." Once his jurisdiction, and consequently his supervision, over the local agents was terminated his right to compensation also ceased.

While in connection with the consideration of this case the court has granted the plaintiff's motion to file the affidavit concerning usage and custom, it has found, as above stated, that the evidential material therein contained is not admissible in the action.

The defendant's motion for summary judgment is granted.

United States District Court
D. Connecticut.

March 28, 1962.

John L. Calvocoressi, Pelgrift, Dodd & Stoughton, Hartford, Conn., for plaintiff.

Bruce W. Manternach, Robinson, Robinson & Cole, Hartford, Conn., for defendant.