Rice & Co. v. Weber.

Rice & Co. v. Weber.

1. *Construction of Contracts.* —In construing a contract, the situation of the parties at the time it was entered into, the property which is the subject-matter of the contract, and the intention and purposes of the parties in making the contract, will be taken into consideration, and the intention of the parties carried into effect, so far as the words employed by the parties and the rules of law will permit.

2. *Contracts Depending upon Future Growth, etc.*—Where a contract relates to specified things, and the performance of it must, in the contemplation of both parties, depend upon the future growth and continued existence of such things, the destruction of the subject-matter of the contract excuses its performance, if such destruction is from no fault or negligence of the party who is unable to perform it.

**Memorandum.**—Action for breach of contract. Appeal from a judgment rendered by the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892. Opinion filed March 6, 1893.

### APPELLANT'S STATEMENT OF THE CASE.

On July 22, 1890, W. C. Langbridge, who was traveling for appellant (an incorporated company), solicited, and appellee gave, an order for several kinds of seed potatoes—twenty-five barrels in all, at $2.75 per barrel, to be delivered the following spring. They were not delivered. Appellee brought suit in attachment. Appellant entered appearance and attachment was dismissed. The justice gave judgment against appellant for $75. He appealed to the Circuit Court, where judgment was entered against him for $62.50.

Appellee made a contract with said agent, Langbridge, for the delivery of twenty-five barrels of seed potatoes in the following spring at $2.75 per barrel, appellee to pay freight estimated at 25c. per bbl., but he never received them. In the following spring he had to buy his potatoes elsewhere at an increased price of three dollars per barrel. Langbridge represented his crop as splendid, in their locality. Their conversation resulted in appellee giving an order in the following language:

Rice & Co. v. Weber.

<table>
<tr><td>Ackd .........</td><td rowspan="13">

**BULK SEED DEPARTMENT.**

All orders are taken subject to the approval of the house, and providing stock is unsold upon receipt of order. No arrangement or contract will be recognized unless specified in this order. Prices net. No seeds or bags to be returned; freight to be paid by purchaser. After shipment in good order our responsibility ceases, and no claims for delays, damages, losses or miscarriage will be allowed. Nor charge for packing or carriage. Barrels, bags and boxes are charged at cost. All accounts subject to sight draft if not paid when due. Salesmen are instructed to give purchaser duplicate order when requested.

JACKSONVILLE, ILLS., July 22, 1890.
JEROME B. RICE & CO., Cambridge, N. Y.:
Please send in spring as soon as weather permits the following SEEDS in bulk.
TERMS OF SALE—Net cash on June 1st after date without regard to day of purchase, or a discount of one per cent. a month will be allowed on all payments before June 1st.

Name HERMAN WEBER,
P. O., Jacksonville, Illinois.
</td></tr>
<tr><td>B .............</td></tr>
<tr><td>D .............</td></tr>
<tr><td>C. R. & S......</td></tr>
<tr><td>Chgd..........</td></tr>
<tr><td>Route.........</td></tr>
<tr><td>Agent.........</td></tr>
<tr><td>Book ..........</td></tr>
<tr><td>D. P...........</td></tr>
<tr><td>Sec. ..........</td></tr>
<tr><td>S. No..........</td></tr>
</table>

*(margin, left vertical:* Agents:    Do not write in this space.*)*

Care of.................................

| Brls. | Variety. | Price. | | | |
|---|---|---|---|---|---|
| | | $ | c. | $ | c. |
| 5 | Potatoes Ery Sunrise, | 2 | 75 | 13 | 75 |
| 5 | " Rose | 2 | 75 | 13 | 75 |
| 10 | " Ohio | 2 | 75 | 27 | 50 |
| 5 | " Beauty Hebron | 2 | 75 | 13 | 75 |
| | No charge for barrels | | | | |
| | Stock to be first class | | | | |
| | (Signed),     HERMAN WEBER | | | | |

The counterpart of this was signed by W. C. Langbridge and retained by appellee.

Afterward appellee sent the following letter:

H. WEBER,
DEALER IN
GROCERIES, GLASS, WOODEN AND WILLOW WARE, TOBACCO,
CIGARS, ETC.
68 East Side Square.

JACKSONVILLE, ILL., Aug. 19th, 1890.

JEROME B. RICE & CO.,

*Gents*—July 22d I ordered through your agent 25 Bbls seed potatoes of four different kinds. Please add 10 more Bbls of Rose, 10 more Bbls. Early Ohio and 5 more Bbls Early Sunrise and oblige,

HERMAN WEBER.

To these communications Mr. Weber had no reply until about Oct. 15th when he received a circular from appellant stating that the potatoes in their vicinity were attacked by rot and so completely destroyed that they were unfit to depend upon for seed, hence " please consider the order you gave our agent canceled." To this he made no answer.

JULIAN P. LIPPINCOTT, attorney for appellant.

### APPELLEE'S BRIEF.

We take the ground that when the principal received notice from the agent of his act in selling the potatoes, then the principal, if he did not approve the order, was bound to repudiate it within a reasonable time. That he could not " file it away," and then after three months, and after potatoes had risen in price, refuse to comply with its terms or repudiate the sale. 1 Wait's Actions and Defenses, page 228; Searing et al. v. Butler, 69 Ill. 575; Foster v. Rockwell, 104 Mass. 167.

" If the principal did not choose to affirm the act, it was his duty to give immediate information of his repudiation. He can not, by holding his peace and apparent acquiescence, have the benefit of the contract if it should afterward turn out to be profitable, and retain the right to repudiate it if otherwise. Law v. Cross, 66 U. S. 187.

JOHN A. BELLATTI, counsel for appellee.

OPINION OF THE COURT, the Hon. Carroll C. Boggs, Judge.

This is an appeal from a judgment rendered in the Circuit Court against the appellant company in favor of the appellee in the sum of $62.50, for the breach of an alleged contract to deliver twenty-five barrels of seed potatoes.

The appellant company at the time of the making of the alleged contract was engaged in the business of growing seeds of various kinds and supplying merchants and grocery-men with such seeds in packages, to be sold upon commission, and in selling such seeds in bulk to retail dealers. On the

22d day of July, 1890, A. C. Langbridge, an agent of the appellant company, called upon the appellee, who is a retail dealer in groceries, wooden ware, seeds, etc., in Jacksonville, Illinois, for the purpose of taking up unsold seed left with him at the beginning of the season for sale upon commission and obtaining settlement for such as had been sold. After such business had been satisfactorily transacted, Langbridge, according to the evidence of the appellee, asked the appellee if he wanted some number one seed potatoes. The appellee replied that he did, as " our crop was a failure," and " we must look elsewhere for seed." Langbridge said their crop was splendid. The appellee thereupon signed an order to the appellant company, directing them to send him " in spring, as soon as weather permits, the following seeds in bulk;" the total of the order being for twenty-five barrels of potatoes of different specified varieties. This order was delivered to Langbridge, as agent of the appellant company. On the 19th of August, 1890, the appellee wrote the appellant the following letter:

" H. Weber, Dealer,

Jacksonville, Ill., August 19, 1890.

Jerome B. Rice & Co.

Gents: July 22d, I ordered, through your agent, twenty-five barrels seed potatoes of four different kinds. Please add ten more barrels of Rose, ten more barrels Early Ohio, and five more barrels Early Sunrise, and oblige,

Herman Weber."

He heard nothing whatever from the appellant company until October 15, 1890, when he received a printed circular, issued by it, advising him that its potato crop was in a serious condition because of the potato rot, which made its appearance about the middle of September, and since continued, with no indication of stopping; that one-half to three-fourths of the crop was worthless, and the farmers feared that all was diseased, and the vitality of the potatoes so far injured that he should not think of getting any seed from this company; that the potatoes could not be relied upon to grow, and would not be acceptable to customers,

and he had better secure potatoes from some locality where the rot had not affected the crop, and notifying him that he might consider his order to the appellant company for seed potatoes canceled. The appellee testified that when he gave the order to Langbridge he understood the appellant company was raising all different kinds of seeds that were in demand; that Langbridge said they had a big crop of potatoes, but didn't say where, but he supposed it was in their locality, or county. It is conceded that the appellant company did not deliver any potatoes to the appellee. No point is made that the damages are excessive. Counsel devote much of their briefs to an interesting discussion of the contention of the appellant company that no contract was completed, because the evidence fails to show that the order of the appellee was accepted. Waiving this, we think there can be no recovery of damages; even if a contract is proven. It appears from the evidence, without contradiction, that it is not the business of the appellant company to sell potatoes upon the general market to be resold for consumption, but only to dealers in seed, for use as seed potatoes. That it does not buy potatoes, but produces them in its fields and gardens, or in the fields of farmers in the immediate vicinity, who, under its supervision, and out of seeds selected by it, plant and cultivate the crop, and produce potatoes for it. In July, 1890, when the alleged contract was made with the appellee, the appellant company had such a crop green and growing, and which promised to mature and yield first-class potatoes for seeding purposes. We think it clearly appears from the evidence that it was the potatoes thus growing, and thus to be matured, that appellant expected to deliver, and the appellee expected to receive. It was for such potatoes the appellee contracted; potatoes out of this crop, then being cultivated, and to be matured by the appellant company as seedsmen, with especial reference to their qualities for seeding purposes. Under the contract the appellee could not have been forced to accept potatoes bought upon the general market, and as a correlative proposition, he could not demand such a performance by the appellant. The evidence

shows beyond contention that the growing potatoes, which the parties had in contemplation, and which formed the subject-matter of this contract, was stricken with rot, and destroyed, or so badly affected with the disease as to render them unfit for seed, and that the appellant company for this reason was unable to and failed to supply seed potatoes to its customers the following spring. It became apparent to the appellants in October, 1890, that the growing crop was seriously damaged by the "rot," and it was feared that the potatoes that were not destroyed by the disease would be so affected by it, as to be wholly unfit for seed. Of this the appellee was immediately informed by a printed circular. The appellant's catalogue of seeds for the season of 1891, a copy of which reached the appellee about January 1, 1891, advised its customers and the public that it would not supply seed potatoes, because of the injury to the crop by the rot.

In enforcing and construing contracts, the situation of the parties at the time it was entered into, the property which is the subject-matter of the contract, and the intention and purpose of the parties in making the contract will be taken into consideration, and the intention of the parties carried into effect, so far as the words employed by the parties in the contract and the rules of law will permit. 2 Parsons on Contracts, page 499.

Where a contract relates to specified things, and the performance of it must, in the contemplation of both parties, depend upon the future growth and continued existence of such things, the destruction of the subject-matter of the contract excuses its performance, if such destruction is from no default or negligence of the party who is unable to perform it. Walker v. Tucker, 70 Ill. 527; 3d American & Eng. Ency. of Law, 901.

This principle is applicable, we think, to the contention between these parties under the facts as they appear incontrovertibly in the evidence, and should have operated to acquit the appellant of liability to respond in damages, because of the failure to deliver the potatoes. Therefore the judgment must be and is reversed and the cause remanded.