# A. L. JONES & CO. v. COCHRAN *et al.*

No. 1852.   Opinion Filed September 11, 1912.

(126 Pac. 716.)

**CUSTOMS AND USAGES—Evidence.** As a general rule, evidence of usages and customs may not be resorted to to interpret a contract, unless there is ambiguity or uncertainty upon the face of the instrument arising out of the terms used by the parties.

(Syllabus by the Court.)

*Error from Pittsburg County Court;*
*R. W. Higgins, Judge.*

Action by G. C. Cochran and C. W. Cochran, doing business as the Cochran Grocery Company, against A. L. Jones & Co. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Irenus P. Keith,* for plaintiff in error.

*W. J. Horton* and *R. A. Smith,* for defendants in error.

HAYES, J.    Defendants in error brought this action in the court below to recover damages against plaintiff in error, A. L. Jones, doing business under the name of A. L. Jones & Co., for damages sustained by defendants in error from the breach of a contract by plaintiff in error to sell and to deliver to defendants in error a quantity of onion sets. The substantial facts alleged in the petition of defendants in error in the court below and established by their evidence are that on the 19th day of February, 1908, plaintiff in error entered into a written contract with defendants in error, as follows:

"Office of A. L. Jones & Co., Room 1010, 169 Jackson Blvd., Chicago, Illinois. Contract for Onion Sets. Between A. L. Jones & Co., of the city of Chicago, state of Illinois, party of the first part, and Cochran Grocery Co., city of McAlester, state of Oklahoma, party of the second part. Said party of the first part sells party of the second part the following amount of onion sets for delivery January, 1909, 31st day: 100 Bbls. Dark Red sets at $1.20 per 32 lb. bu.; 100 Bbls. yellow sets at $1.10 per 32 lb. bu.;

25 Bbls. white sets at $1.50 per 32 lb. bu. Following terms and conditions: Net cash, F. O. B. Chicago. Packages charged for extra. Second-hand barrels 20c each; 1 bushel crates 11c. each; new 2 bushel sacks 5c each. Delivery to be made as near specified date as weather will permit. Sets to be in good merchantable condition at time of shipment; to be screened through 1⅛ inch mesh sieve. It is agreed that the party of the first part shall not be held liable for damages for the nonfulfillment of this contract, in case the above-mentioned sets are destroyed by fire or other unavoidable cause. If a portion of the above sets are destroyed, that party of the first part will deliver the balance of the contract. Cochran Grocery Company. A. L. Jones & Company, Brandt. 2-19-08."

Plaintiff in error, in accordance with said contract, delivered 50 barrels of red onion sets, 60 barrels of yellow onion sets and fifteen barrels of white onion sets, but failed and refused to deliver the balance under the contract. On the 31st day of January, 1909, at which time the contract was to be performed by delivery of all the onion sets, the value of said sets per bushel was on the market in Chicago higher than the price stipulated in the contract. Defendants in error recovered judgment in the trial court for $206.50 damages. Plaintiff in error by his answer admits the execution of the contract, but alleges that at the time of the execution of the contract he was engaged in the fertilizing business and incidentally thereto in growing onion sets; that the Chicago Set & Seed Company, a corporation, was also engaged in the growing of onion sets; that neither of them bought or sold on the general market, but sold only the crop grown by them respectively. He alleges that on or about the 1st day of December, 1908, the Chicago Set & Seed Company purchased and succeeded to the business of plaintiff in error in growing onion sets, and entered into a contract to take over his onion sets and to fill his contracts to the extent of the crop raised during the year 1908 by the Chicago Set & Seed Company and A. L. Jones & Company. He alleges that the aggregate of the crop of onion sets grown by him and the said Chicago Set & Seed Company was prorated upon his contracts, thus giving his contracts a much larger percentage than could have been realized if their fulfillment had depended entirely on the sets grown by plaintiff in error. He admits that

he delivered on the contract only the quantity of sets alleged in the petition of defendants in error, but avers that he was unable to deliver the remainder of the sets under the contract because of an unavoidable shortage in his crop. He alleges that the contract was made in Illinois and to be performed in Illinois; that it was the custom and usage in that jurisdiction, where there is a shortage in crops, so that all contracts cannot be fulfilled, to prorate the crop on all contracts, as was done in this instance. Plaintiff in error undertook at the trial to introduce evidence to the effect that he is an onion grower, engaged in growing onion sets; that he did not purchase and sell onion sets on the market, but sold only onion sets grown by him; that it was the custom and usage among such growers in Illinois to sell their crops of onion sets before they were produced, and, where contracts for the sale of sets to be grown by any grower cannot be filled in full on account of shortage in the crop, to prorate the amount grown upon the various contracts of the grower, as was done in this case; and that such acts on the part of the grower relieves him from further liability under his contract. The purpose of this evidence, all of which was rejected by the trial court, was to show that the parties to the contract here involved contracted relative to specific onion sets, to be grown by plaintiff in error during the year 1908, and to relieve plaintiff in error of liability, because of an alleged shortage in the crop. We think the trial court committed no error in rejecting this evidence.

There is no uncertainty or ambiguity in that portion of the contract which describes the property sold and to be delivered by plaintiff in error in the future. It definitely specifies the quantity and kind of sets and the price to be paid therefor, the place of delivery, the condition in which the sets are to be when delivered, and that they are to be screened. It is not specified that the property sold shall be sets raised by any specified person or upon any specified place. If plaintiff in error had on the date specified in his contract for delivery of these sets gone into the market and procured the kind of sets described in the contract in the quantity therein specified and offered to deliver them to defendants in error, he would have fully complied with his contract. Nor

do the last two paragraphs of the contract have the effect to render it ambiguous. The first of these paragraphs provides that plaintiff in error shall not be held liable for damages for nonfulfillment of his contract in case the sets are destroyed by fire or other unavoidable cause. This contract was executed before the sets were in existence, and almost a year before the same were to be delivered to the vendee. Plaintiff in error was willing to take the chances on producing or obtaining the sets for delivery as contracted, but desired to relieve himself of the risk of destruction of the sets by fire or other unavoidable cause, after the same were procured for delivery, and by this provision of the contract he relieved himself of such liability. This provision does not undertake to stipulate that, if the onion sets are not produced during said year, he shall be relieved of his liability, but provides that he shall be relieved of all liability "if they are destroyed by fire or other unavoidable cause." The last paragraph of the contract provides only that the plaintiff in error shall have the privilege to and shall, in the event he is unable to fulfill his contract on account of a portion of the sets being destroyed from the causes mentioned in the preceding paragraph, deliver whatever he may have left.

The circumstances under which usages or customs may be resorted to for the purpose of interpreting a contract are well settled. Such extrinsic aid cannot be resorted to when the contract is susceptible of a reasonable construction on its face. Mr. Greenleaf, upon this question, says:

"Their true nature is to interpret the otherwise indeterminate intentions of the parties, and to ascertain the nature of their contracts arising, not from express stipulation, but from mere implications and presumptions, and acts of doubtful and equivocal character, and to fix and explain the meaning of the words and expressions of doubtful and various senses." (2 Greenleaf on Ev. sec. 251.)

The same author again says:

"But, though usage may be admissible to explain what is doubtful, it is not admissible to contradict what is plain." (1 Greenl. Ev. sec. 292.)

The same doctrine is expressed in *Oelricks v. Ford*, 23 How. 49, 16 L. Ed. 535, in the following language:

"As a general rule, there must be ambiguity or uncertainty upon the face of the writen instrument arising out of the terms used by the parties, in order to justify the extraneous evidence, and, when admissible, it must be limited in its effect to clearing up the obscurity.  It is not admissible to add or ingraft upon the contract new stipulations, nor to contradict those which are plain."

The rejected evidence attempts to ingraft upon this contract the stipulations that the onion sets contracted for sale by him were to be those grown by him, and that he is to fulfill only his contract in part, if he should fail to grow them from an unavoidable cause, first, by showing that plaintiff in error is a grower of onion sets, and not a dealer therein; and, second, by showing that it was the custom of such growers in Illinois to contract their crops in advance, and if there was a failure in the crops, which rendered it impossible for the grower to fulfill all his contracts, then to prorate the yield upon the contracts made as a complete fulfillment of the contracts.  This, we think, he cannot do in the face of the plain provisions of the contract definitely contracting for the sale of a specific quantity of onion sets of a given kind, but not for any specified sets.

Plaintiff in error cites and relies upon *Dexter v. Norton,* 47 N. Y. 62, 7 Am. Rep. 415; *Ontario D. Fruit-Growers' Ass'n v. Cutting Fruit-Pack. Co.,* 134 Cal. 21, 66 Pac. 28, 53 L. R. A. 681, 86 Am. St. Rep. 231, and *Rice & Co. v. Weber,* 48 Ill. App. 573. None of these cases, in our opinion, is in point.  They all support the doctrine that where the sale is of specific goods and the goods perish before delivery, without fault of the vendor, the vendee has no right of action for failure of the vendor to deliver. But the question involved here is not whether a vendor is relieved of liability under a contract for the sale of specified articles when destroyed by an unavoidable cause, but is whether there is a contract for sale of specific articles.  In *Dexter v. Norton, supra,* the contract was for the sale of a certain number of bales of cotton, each bale of which was marked, and the contract described the particular bales sold.  In *Ontario D. Fruit-Growers' Ass'n v. Cutting Fruit-Pack. Co., supra,* the contract was for the peaches grown during a certain year on the orchards or lands particu-

larly described. In *Rice v. Weber, supra,* the contract was very similar to the one here involved, and the case is more nearly in point than any of the others cited and relied upon. The contract in that case was for the sale and delivery of a certain number of barrels of potatoes. So far as is disclosed by the opinion, it appears that evidence was introduced without objection to show that the vendor was a grower of potatoes, and not a dealer in potatoes; that at the time he made the contract he had a crop of potatoes growing. In construing the contract the Court of Appeals of that state took into consideration this evidence, and held that it was a contract for the sale of specific potatoes. The opinion does not in any place point out wherein the contract involved in that case was ambiguous, and, after carefully reading it, we are unable to see wherein it is ambiguous, and requires any construction. It has been insisted by plaintiff in error that that case is controlling upon this court in the instant case, for the reason the instant case is founded upon an Illinois contract to be performed in that state. If the case were squarely in point, it would not be binding upon this court, for the reason that the case relied upon is not from the highest appellate court of that state.

Several other assignments of error have been made, complaining of the trial court's refusal to give certain instructions, but these instructions in the main would have been proper only if the rejected evidence had been competent; and we need not consider them.

There being no reversible error presented, the judgment of the trial court is affirmed.

TURNER, C. J., and WILLIAMS, KANE, and DUNN, JJ., concur.