## EL RENO MILL & ELEVATOR CO v. MEDLOCK GROCERY CO. et al.

No. 12753—Opinion Filed Mar. 11, 1924.

**1. Customs and Usages—Evidence.**

As a general rule, evidence of usages and customs may not be resorted to to interpret a contract unless there is ambiguity or uncertainty upon the face of the instrument arising out of the terms used by the parties.

**2. Same — Contract Unambiguous as to Price Not Varied by Evidence of Custom.**

A contract in writing for the purchase of flour expressed the price per barrel in dollars and cents. Held, that, as to price, said contract was plain, certain, and unambiguous upon its face, and evidence of custom to vary or contradict such price was not competent in the absence of fraud or mistake.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Tillman County; Edward Dewes Oldfield, Assigned Judge.

El Reno Mill & Elevator Company sued Medlock Grocery Company in damages for breach of contract. Judgment for defendant. Plaintiff appeals. Reversed.

E. E. Gore, P. Mounts, Glen A. Wisdom, and Orbie W. Johnson, for plaintiff in error.

Wilson & Roe, for defendants in error.

Opinion by ESTES, C. Parties appear here in the same order as in the trial court. Plaintiff sued defendant, a copartnership, naming the partners, to recover $1,725 as damages for breach of contract for purchase of 150,000 pounds of flour. Plaintiff wrote defendant:

"The El Reno Mill and Elevator Co.
"El Reno, Oklahoma, Contract No. 511.
"El Reno, July 24, 1917.
"Medlock Grocery Company,
"Grandfield, Okla.
"Dear Sirs:—

"We confirm sale to you by phone, Mr. Huff this date as follows: 6 cars, 25,000 pounds each Humreno flour, prices per bbl. or cwt. 13.20, Basis 48s, Freight allowed to Grandfield, Oklahoma, Shipment 90 days, Total 150,000 pounds. Less 10c CWT. Terms net cash, draft payable on arrival

of car at destination. Package differentials. If there is any error in this confirmation please notify us at once.

"The El Reno Mill and Elevator Co.,
"By A. J. Jones."

Defendant answered said letter on the postal card enclosed by plaintiff for such purpose, as follows:

"July 24, 1917.

"This acknowledges receipt of confirmation covering 150,000 pounds of Flour your No. 511, dated July 24, 1917. It agrees with our understanding of the contract.

"(Signed) Medlock Grocery Co.,
"By J. Newton Huff.

"Kindly sign and return this card if confirmation is correct, so we will know that no error has been made. If not correct advise us promptly of any difference.

"El Reno Mill and Elevator Co.

On reverse side. "Postal Card addressed to El Reno Mill and Elevator Co., El Reno. Okla."

On September 12th plaintiff wrote defendant that it presumed that when orders of this kind were booked that they were for carload shipments to be scattered through that period; that while defendant had until October 24 to order the flour, defendant should commence shipping against the contract at once. On October 10th plaintiff again by letter called attention to the contract and urged that specifications for shipment be sent before October 24th. On October 29th plaintiff wrote defendant, stating that defendant had failed to order out the flour, and that plaintiff was charging defendant with the loss. Defendant made no reply to any of these letters until November 14th, on which date and in subsequent letters between the parties a controversy was begun and carried on. On verdict of jury, judgment was for defendant.

Defendant pleaded and introduced evidence tending to prove—and the court instructed conformably therewith—that there was a general custom of trade well known to plaintiff that the order for said flour was taken under a guaranteed price, i. e., if flour declined, defendant should pay for the flour under said contract at the market price at the time of delivery. Plaintiff objected and saved exceptions to the introduction of evidence as to such custom, and to the instructions covering such theory. Wherefore plaintiff assigns error. It is not controverted that there was a sharp decline in the price of flour after the date of said contract, reaching $10.40 the barrel on October 24, 1917. Plaintiff's claim for damages was not disputed as to the amount thereof.

1. It has been said of old that usage may be admissible to explain what is doubtful; it is never admissible to contradict what is plain. In Jones & Co. v. Cochran et al., 33 Okla. 431, 126 Pac. 716, it is said:

"The circumstances under which usages or customs may be resorted to for the purpose of interpreting a contract are well settled. Such extrinsic aid cannot be resorted to when the contract is susceptible of a reasonable construction on its face."

The general rule is followed in that case, that customs may not be resorted to, to interpret a contract, unless there is ambiguity or uncertainty upon the face of the instrument arising out of the terms used by the parties. Cleveland et al. v. Mascho et al., 73 Oklahoma, 175 Pac. 927; Cherokee Grain Co. v. Elk City Flour Mills Co., 78 Okla. 120, 188 Pac. 1067; Winemiller v. Page, 75 Okla. 279, 183 Pac. 501; 17 C. J. 492. See Oelricks et al. v. Ford, 23 How. (U. S.) 49, 16 L. Ed. 534, holding that, where there was a written contract to deliver certain quantities of flour at a certain price, proof of a usage to demand margins of the seller was inadmissible.

The term "price per bbl. or cwt. 13.20 basis 48s", in so far as price is concerned, is not doubtful or ambiguous. Defendant does not contend that the price named does not refer to the barrel lot. Such contract, as to the price therein named, is not susceptible of construction. It carries its own import on its face. The price, $13,20, imports what it purports. Extrinsic aid or evidence of custom is not competent to modify it. A great volume of the business of the commercial world is carried on by transactions based on orders. These are often informal and cryptic, containing abbreviations and trade terms. As to all such, the usage and customs will be read into the contract as a part thereof. An illustration is found in the contract under consideration. By custom shown by the record, a barrel of flour sold on a basis of 48 pound sacks, is four of such sacks. If the flour be in smaller packages, the price per barrel would perhaps be greater because of the extra cost of packing. This package differential is fixed by custom. The law cannot re-make such orders for the parties. Such order is controlled by the same canons of construction as other and more formal contracts. Otherwise the foundations of the commercial world might be imperiled and the door opened to repudiators of contracts. Follow-

ing the war of Independence, many sought to repudiate obligations due the mother country from the colonies. The fathers and founders of this Republic battled a political movement to that end. It was decided to pay—not to repudiate. Since the days of the great John Marshall the inviolability of contracts has been a fundamental and venerable property right upheld by the courts. Constitutions guarantee thereunto. Canons for the judicial construction of contracts have been laid down and are applied for the same purpose. In the instant case, if defendant can show by custom that the agreement to pay $13.20 per barrel for flour, in the absence of fraud or mistake, means to pay $10.40, then, by the same token, may not the obligations of all contracts be impaired and violated by thus superadding that which is repugnant to their plain terms? It was reversible error to permit defendant to introduce evidence of the alleged custom and likewise error for the court to countenance the same in the instructions.

It was pleaded and contended by defendant that said Huff, who undertook to act for defendant in the matter of executing said contract, had no authority thereunto. Plaintiff assigns also as error that the court improperly instructed the jury on this issue and particularly that the court did not define apparent scope of an agent's authority. It is unnecessary to pass upon these and other alleged errors. Agency is a question of fact to be proved. It seems that there was sufficient evidence to carry the case to the jury on the agency of Huff, in making the said contract. The case should be submitted to the jury on this issue under proper instructions.

The judgment is reversed and the cause remanded for a new trial accordingly.

By the Court: It is so ordered.