## DAVIS v. DAVIS et al. (No. 1681.)

(Court of Civil Appeals of Texas. El Paso. Nov. 20, 1924. Rehearing Denied Dec. 11, 1924.)

**1. Sales ⟐⟐88—Construction of plain, unambiguous contract held for court rather than jury.**

Construction of plain and unambiguous contract for sale of cotton, *held* question for court rather than jury.

**2. Contracts ⟐⟐245(2) — Prior verbal agreement is merged in subsequent written contract.**

Prior verbal agreement is merged in subsequent written contract.

**3. Contracts ⟐⟐309(1)—Intervening impossibility of performance, which might have been anticipated and guarded against, does not excuse performance.**

As a general rule, an intervening impossibility of performance, which might reasonably have been anticipated and guarded against, does not excuse performance.

**4. Sales ⟐⟐172—Illness preventing growing of cotton crop held not to excuse performance of contract for sale of such crop.**

Conceding that crop failure, due to fortuitous circumstances, might excuse performance of contract for sale of cotton, a showing that failure to grow cotton sold was due to seller's illness is insufficient to excuse performance, though constituting a circumstance beyond his control.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Britton Davis and others against Charles Davis. Judgment for plaintiffs, and defendant appeals. Affirmed.

Kemp & Nagle, of El Paso, for appellant.

Waters Davis and W. H. Fryer, both of El Paso, for appellees.

HIGGINS, J. In May, 1923, appellant, Charles Davis, and the appellees, Britton Davis and W. T. Carruth, entered into a written contract which reads:

"This writing witnesseth: That Davis & Carruth, a firm composed of Britton Davis and W. T. Carruth, of El Paso county, Tex., have paid to Charles Davis of the county and state first above written, the sum of one ($1.00) dollar, as part of the purchase price for cotton hereinafter described, balance of the purchase price to be paid in full upon delivery f. o. b. gin, yard, or railway platform. That in consideration of said payment and promises on the part of said Davis & Carruth, said Charles Davis promises and binds himself to deliver the said Davis & Carruth 25 bales of cotton to average 500 pounds to the bale, to be clear of all liens and incumbrances, and to be from first cotton ginned of the farm known as Davis farm, situated in survey El Paso county, Clint, Tex., said cotton shall be for December, 1923, delivery at 20 cents per pound, basis middling; grade differ-

ences one-fourth up strict middling, one-half up good middling, one-half off strict low middling and off low building, 1 off spotted, tinged, or stained.

"Time is of the essence of this contract, so that unless the cotton contracted for herein is delivered or tendered before or during the month of December, 1923, the second party will be in default in the performance of the contract, and liable for all consequences resulting."

This action was brought by the appellees against the appellant for an alleged breach of said contract.

But one issue was submitted to the jury, viz.: "What was the market value per pound, at Clint, Tex., of cotton, middling grade, on December 31, 1923?" This was answered: "36.35 cents per pound." It was shown that only six bales were delivered, and no issue is presented as to that fact. Judgment was rendered in plaintiffs' favor for $1,457.25.

From conclusions filed by the trial court, it appears the case was disposed of upon the theory that the written contract between the parties constituted—

"an unconditional contract by defendant to sell and deliver to plaintiffs at the time specified in the contract 25 bales of cotton, irrespective of whether or not the same were raised on the said farm, and irrespective of whether or not the failure to raise the same was due to any negligence on the part of defendant, his agents, servants or employees, and irrespective of whether or not the crop failure was caused by an unanticipated act of God or of nature which rendered the performance impossible, and that upon failure to produce said 25 bales of cotton on said land no matter from what the failure might have resulted, the defendant was liable to plaintiffs for the difference between the market price when same should have been delivered, to wit, the latter part of December, 1923, and the contract price of the 19 bales of cotton, to wit, $1,457.25, which were not delivered or tendered in the month of December, 1923, or prior thereto, and evidence of cause of the failure to produce the full 25 bales was and is immaterial."

Error is assigned to the refusal to submit the issues of whether it was intended by the written contract to obligate defendant to deliver 25 bales only in the event that amount was raised by him, and whether, at and prior to the execution of the contract, it was the verbal agreement between Britton and Charles Davis that plaintiffs should purchase all of the cotton crop raised by the latter on his farm in 1923.

[1, 2] The contract is plain and unambiguous. Its interpretation was for the court, and there was no occasion to submit the issue of the intention of the parties with respect thereto. It plainly obligated defendant to deliver 25 bales of cotton to be grown on the Davis farm. The agreement having been reduced to writing, the prior verbal agreement became merged in it. The evidence does not raise any issue as to mutual mistake.

---

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

One of the assignments appearing in the back of appellant's brief complains of the refusal to submit the issue of mutual mistake, but no proposition is submitted in support thereof, nor is any point with respect to its refusal otherwise made in the brief, so we may well assume that such assignment is abandoned.

The appellant's main contention arises upon its first four propositions. These are based upon assignments which complain of the exclusion of evidence tending to show that defendant's failure to produce more cotton upon his land was due to no negligence on his part, but to causes beyond his control; to the above conclusions of law by the trial court; also to the refusal of a peremptory instruction in defendant's favor, upon the ground that the evidence shows defendant delivered or tendered all cotton raised on his farm during the year 1923, and there being no evidence that defendant's failure to produce more cotton was due to any negligence on his part, and the court having found as a fact that such failure was not due to his negligence. The appellant's contention upon this phase of the case is that the contract between the parties was subject to an implied condition excusing full performance in the event, through no fault of his own, less than 25 bales was raised on his farm.

[3] The general rule is that an intervening impossibility of performance which might reasonably have been anticipated and guarded against in the contract does not excuse performance. This rule has been most aptly stated by Justice Talbot of the Court of Civil Appeals for the Fifth District in an opinion expressly adopted by the Supreme Court, in which it is said:

"For the purposes of this case, it may be asserted that when a party voluntarily undertakes and by contract binds himself to do an act or thing, without qualification, and performance thereof becomes impossible by some contingency which should have been anticipated and provided against in the contract, the nonperformance will not be excused. In such case the party's failure to exempt himself from responsibility in the event of the happening of the contingency will be attributable to his own folly, and he will be held to make good his contract." Houston I. & B. Co. v. Keenant, 99 Tex. 79, 88 S. W. 197.

Various applications of the rule have been made by the courts of Texas. Gunter v Robinson (Tex. Civ. App.) 121 S. W. 134; Northern Irr. Co. v. Dodd (Tex. Civ. App.) 162 S. W. 948; Northern Irr. Co. v. Watkins (Tex. Civ. App.) 183 S. W. 431; Taylor Cotton Oil Co. v. Early-Foster Co. (Tex. Civ. App.) 204 S. W. 1179.

The rule has often been applied to contracts for the sale of agricultural products when the particular land upon which the product is to be raised is not specified. Anderson v. May, 50 Minn. 280, 52 N. W. 530, 17 L. R. A. 555, 36 Am. St. Rep. 642; McGehee v. Hill, 4 Port. (Ala.) 170, 29 Am. Dec. 277; Jones & Co. v. Cochran, 33 Okl. 431, 126 P. 716; Newell v. New Holstein Canning Co., 119 Wis. 635, 97 N. W. 487; Hayward Bros. v. Daniel, 91 L. T. N. S. (Eng.) 319. On the other hand there are certain exceptions to the general rule stated above, and there are some decisions which hold that, in a contract for the sale of agricultural products to be grown upon certain specified premises and by reason of a partial failure of the crop due to adverse climatic conditions or plant disease, performance is to that extent excused. In such cases the contract to sell is regarded as subject to an implied condition relieving the obligor from performance to the extent of the crop failure. Ontario, etc., v. Cutting, etc., 134 Cal. 21, 66 P. 28, 53 L. R. A. 681, 86 Am. St. Rep. 231; Howell v. Coupland, L. R. G. Q. B. (Eng.) 462. See, also, Benjamin on Sales (6th Ed.) § 570, and note in L. R. A. 1916F, on pages 63 to 65.

It seems to us that the grower of agricultural products may at all times reasonably anticipate adverse climatic conditions, plant disease, or insects which will cause a yield below normal in quantity or quality, and we see no reason why, when he undertakes to contract for the sale of a stated quantity of products to be grown on his land, he should not be required to guard against a crop failure in the contract which he makes if he desires to be excused for nonperformance on that account. We seriously doubt the soundness of the decisions cited which recognize such a condition of affairs as constituting an exception to the general rule. Nor do we think the authorities sustain the broad statement that in such contracts performance is excused when the impossibility thereof arises through no fault of the obligor. We think performance is excused only in cases where the impossibility is occasioned by adverse climatic conditions, plant disease, or some other wholly fortuitous circumstance in the nature of vis major. A crop failure might result through no negligence of the obligor, or due to causes beyond his control, and yet fall far short of any of the circumstances in the reported cases wherein the obligor was held to be excused.

But, assuming the correctness of the cases relied upon by appellant, we are of the opinion that upon the record here presented they have no application. The evidence does not disclose the exact cause of the failure by the defendant to produce upon his farm the 25 bales which he contracted to deliver.

Appellant testified:

"That is when I first spoke to him (referring to Britton Davis). I told him I would like to sell what cotton I raise on my farm down the valley. I don't know whether it was the first conversation, or later, that I told him I was going away from here, and I wanted to sell it in advance. I was going east, to Boston. I

was away about 8 weeks, and then here 2 weeks, and away 8 weeks more. I told Britton Davis that I was going away, and would not be here during the cotton growing season. * * * It was not my understanding that I was guaranteeing to sell him 25 bales of cotton, and I did not guarantee to sell him 25 bales of cotton. I had between 45 and 55 acres in. I did tell him that I was going away. I don't think I told him I would not be here to superintend the raising of the cotton, but I told him I was going away. I think I told him the length of time I would be away. I was away approximately 3 months, with an intermission of 2 weeks. I think my cotton was planted at the time I made this contract, in May. I don't recall when it was planted. I had somewhere between 45 and 55 acres planted. I had a very intelligent man in charge of my farm, but not experienced. I had proper facilities for growing cotton and cultivating it. I raised 8 bales on the acreage I had planted, 7 bales and one of bolls. I delivered 6 bales to Mr. Davis, which he accepted. * * * "

By bill of exception it is shown that:

"While the defendant, Charles Davis, was on the stand, his attorneys asked him if his land was fairly good land, to which the plaintiff excepted on the ground that it was immaterial, which objection was sustained by the court though the witness would have answered that it was fairly good land; and defendant's attorneys asked him the further question, 'Why didn't you raise more cotton?' to which plaintiff excepted for the reason that same was immaterial, and 'the court sustained his exception though the witness would have testified that, notwithstanding the land was properly cultivated, due to circumstances beyond his control, there were only 8 bales produced, notwithstanding he had between 45 and 55 acres in cotton, and that, of these 8 bales, 6 were delivered to plaintiffs, 1 was tendered to the plaintiffs on January 2 or 3, 1924, and the remaining 1 bale, being a bolls, was also tendered to plaintiffs, but was refused by them. The defendant further offering to show that during the time of cultivating the crop in question, he was absent from the city of El Paso through sickness of his family and not from pleasure; it being objected, however, that same was immaterial. Counsel for defendant stated: 'I am very sincere in this contention that a man might make a contract and deliberately go away and leave it, and cause damage, and the purpose I have in asking those questions I expect to show by Mr. Davis that he was away absolutely through necessity, and on account of the exigencies of a situation that would preclude his being here, and that is based on the theory that he made a contract to furnish the cotton that grew on his land, and I think some legal obligation might rest upon him, having made that contract, to see some was grown. I don't think he can make it, and deliberately get on the train and leave, I want to show he left, not on a pleasure trip, but on account of his own health.' The defendant, through his attorneys, offered to prove and would have proved by him that the defendant was absent from El Paso through necessity and on account of the exigencies of the situation, and that a failure on his part to raise more cotton than he actually did raise on the land in question was due to no fault or negligence on his part, but was due to matters beyond his control, and offered evidence tending to prove that his failure to raise more cotton was not due to his fault; all of which proof the court refused to let the defendant make, but in open court stated that he would not submit any issue to the jury as to whether or not there was negligence on the part of the defendant in not producing the 25 bales of cotton on the land in question, and that he would make a finding of fact to the effect that the defendant was not negligent in failing to produce on said land more cotton."

The excluded evidence if admitted would not have brought the case within the exception contended for by appellant.

[4] None of the authorities relied upon go to the extent of excusing performance simply because the impossibility thereof has been occasioned by "circumstances ' beyond his (obligor's) control," or by a condition brought about without negligence on his part. The authorities we think go no further than to excuse performance under the circumstances stated above. In our opinion the excluded evidence; if admitted, would have presented no defense. Furthermore, we very much doubt if the pleadings present any issue with respect to a defense based upon the implied condition relied upon by appellant.

However, we prefer not to base our decision upon any question of pleading, but upon the view that, conceding the law imports into the contract a condition excusing full performance in the event such performance is rendered impossible by an intervening act of God, a partial crop failure due to plant disease, ravages of insects, adverse climatic conditions or other wholly fortuitous circumstances in the nature of vis major, nevertheless no such defense is presented by the evidence adduced, or tendered and excluded. Wherefore, upon the finding of the jury, and the admitted fact that only 6 bales of the grade stipulated were delivered, no other judgment could have been properly rendered except that which was rendered.

Upon this view, any error in the trial court's conclusions of law becomes harmless.

Affirmed.