## DEEPWATER OIL REFINERIES v. RAMSEY et al.

### No. 1325.

District Court, N. D. Oklahoma.
May 18, 1932.

Biddison, Campbell, Biddison & Cantrell, of Tulsa, Okl., for plaintiff.

Mauzey & Coppedge, of Tulsa, Okl., for defendants.

KENNEDY, District Judge.

This is an action at law in which the plaintiff seeks to recover of the defendant the value of certain oil containers in which oil had been shipped by the plaintiff to the defendant under a written contract for the purchase and sale of such oil. Issues were joined by an answer of the defendant to which the plaintiff interposed a demurrer, which demurrer was heard by the presiding judge of this district and overruled. A reply was thereupon filed and the case came on for trial before the court and a jury duly impaneled. Many objections to the introduction of certain classes of testimony were interposed, but, in order to allow the case to be presented upon the varying theories of counsel, such evidence was taken so that a record might be perpetuated which would perhaps enable an appellate court to determine finally in whose favor a judgment should be entered without a retrial of the suit. One specific question, admittedly one of fact, was as to the value of the containers concerning which the suit was brought. At the close of all the evidence, the plaintiff and defendant each moved for a directed verdict in their favor which put to the court the matter of deciding all questions of both law and fact, but, in addition, it was specifically stipulated that the court should determine the value of such containers as the basis of the recovery sought by plaintiff. The court thereupon, at the close of the argument, determined the question of fact upon the evidence as to the value of the containers in controversy, and found the 55-gallon containers to be of the value of $1.15 each, and the 30-gallon containers to be of the value of 85 cents each. There was no dispute in the testimony that there were 835 of the 55-gallon containers and 830 of the 30-gallon containers. Figured on the basis of the amount found as the value of these containers per unit, such value amounts to $1,665.75, and such being the amount that the plaintiff should be entitled to recover of the defendant in the event recovery is allowed. The court thereupon took the matter of the legal questions involved under advisement.

A review of the precise pleadings in the case would seem to be unnecessary, for the reason that the points involved will be disclosed as the controverted issues in the case upon a recital of the facts under which the controversy arises.

Upon May 7, 1930, the plaintiff and the defendant Robert Ramsey entered into a written contract for sale by the plaintiff to the defendant Ramsey for a specified quantity of oil at a given price. After the execution of the contract, and before its complete consummation by deliveries, the defendant Ramsey Oil Company was incorporated and took over the business of the individual defendant. It was stipulated upon the trial by the parties, to obviate the necessity of proofs touching this question, that any judgment rendered in the case should run against both defendants. The contract provided that the plaintiff should sell and deliver to the defendant two classes of oil, described in the contract as filtered pale oil and green cast red oil, at a certain specified price per gallon depending upon the viscosity of said oils in the different classes, which oils were to be of the plaintiff's manufacture. The contract provided that the prices named therein were f. o. b. cars at the plaintiff's plant in Houston, Tex., shipment to be made in tank car lots or in barrels, but, if shipped in barrels, such shipments to be in not less than carload lots. It was further provided by the contract that there should be a certain graduated scale to

be allowed in the event of the upward price or downward price of oil in the market which should regulate the price paid for the oil. It was provided that the defendant might order said oil as it was needed in the due and regular course of business, except as to certain limitations for minimum amounts within stated periods. It was further specified that a wood barrel should be from 47 to 52 gallons, a metal half barrel 30 gallons, a metal barrel 50 to 55 gallons, and a tank car, when not otherwise specified, 8,000 gallons. It was provided that the plaintiff should route shipments by the lowest rate of freight, unless otherwise specified by the defendant, and that on receipt of a car it should be unloaded within a specified time, and that the defendant should re-route said car to the plaintiff as it might direct. There are other provisions in the contract which would not seem material to the points here involved. The defendant was a jobber in oils, and a portion of the oils purchased under the contract were shipped either to him direct or to other of his customers at different points as he might order. Upon request, the plaintiff stenciled the name of the defendant or that of his customer upon the barrel. On October 8, 1930, the defendant first ordered oil for delivery in drums by telegram addressed to the plaintiff directing it to ship certain oil in drums to apply on the contract. In response, the plaintiff wired an inquiry as to whether the defendant desired shipment to be made in new or secondhand drums, indicating the price of the oil in each instance above the bulk price named in the contract. The defendant thereupon wired plaintiff that the contract showed the same price for oil in bulk and drums and directed plaintiff to use either new or suitable used drums. To this wire the plaintiff addressed a wire to defendant to the effect that it had assumed the defendant wanted to purchase drums, but, as it now understood from the wire of the defendant that he did not desire to purchase drums, the shipment was being made in accordance with the order at bulk prices under contract, and requesting return of empty drums within thirty days, freight prepaid to the place of shipment. Much correspondence followed, but this evidence has the significance of showing that the parties at all times adhered to their original positions in the ownership of the containers after delivery, and a considerable amount of oil was so shipped to defendant in containers, the title to which is involved in this suit.

It will be observed from the above recitation of the terms of the contract that the contract is silent in regard to the disposition of the containers after they had reached the defendant. There is a point raised in the controversy as to whether or not the contract in this respect is ambiguous in the matter of fixing the rights of the parties concerning the title to the drums. Counsel are agreed in their presentation of the argument that the contract is not ambiguous, and yet the defendant takes a dual position that, in the event the court should decide that the contract is ambiguous, he should be permitted to introduce evidence as to the manner, custom, and usages concerning the purchase of oil in barrels as to who should become the owner of the container upon its delivery, and upon this latter theory evidence was introduced tending to show that, where oil is purchased for delivery in barrels, upon such delivery, the barrel becomes the property of the purchaser, at least where the oil is sold at retail or in comparatively small quantities. The plaintiff countered by offering testimony tending to show that, where oil is sold for delivery other than in bulk or tank car lots, the value of containers is always added to the per gallon price. The evidence upon this point was taken, as before stated, to clear the record finally should the court determine that manner, custom, and usages is a relevant and admissible matter of proof under the circumstances arising in this case. The other contention of the defendant is that, independent of proof of this character under the circumstances in the case, the title to the containers passed as an incident to the delivery of the commodity. On the other hand, plaintiff's contention is that, the contract being silent as to the disposition of the containers and the contract not being ambiguous in its terms, no evidence as to manner, usages, or custom is admissible, and, the contract being for the sale of certain oils per gallon and the containers in which a part of such oil was to be shipped representing a substantial percentage of the purchase price as is indicated and proven in the case here, the passing of the title of the containers as an incident to the delivery of the commodity cannot be presumed, and that, the plaintiff being the owner of the containers, no suggestion or consent having been given by plaintiff to the passage of the title, the ownership and title having been specifically reserved at the time of shipment, such title always remained in the plaintiff.

█ It is apparent that the first step in the solution of the controversy is to determine whether or not the contract is ambiguous so as to permit extraneous proof of manner,

custom, and usages. Upon this point this court has reached the conclusion in harmony with the views of all counsel that the contract is not ambiguous, and therefore extraneous evidence is not admissible. In Oelricks v. Ford, 23 How. 49, at page 63, 16 L. Ed. 534, the Supreme Court says: "But, independently of the total insufficiency of the evidence to establish the usage, we are satisfied, if it existed, the proof would have been inadmissible to affect the construction of the contract. This proof is admissible in the absence of express stipulations, or where the meaning of the parties is uncertain upon the language used, and where the usage of the trade to which the contract relates, or with reference to which it was made, may afford explanation, and supply deficiencies in the instrument. Technical, local, or doubtful words may be thus explained. So where stipulations in the contract refer to matters outside of the instrument, parol proof of extraneous facts may be necessary to interpret their meaning. As a general rule, there must be ambiguity or uncertainty upon the face of the written instrument, arising out of the terms used by the parties, in order to justify the extraneous evidence, and, when admissible, it must be limited in its effect to the clearing up of the obscurity. It is not admissible to add to or engraft upon the contract new stipulations, nor to contradict those which are plain."

Many courts, federal and state, have followed this general rule, including the Supreme Court of Oklahoma, in which state the evidence shows this contract was finally consummated, where the court in Jones & Co. v. Cochran, 33 Okl. 431, 126 P. 716, held that proof of custom and usages cannot be resorted to, unless there is ambiguity or uncertainty upon the face of the instrument arising out of the terms used by the parties. Citations from other courts along the same line might be almost indefinitely multiplied.

It is true that there are instances of where evidence of manner, custom, and usages may be received to ascertain and explain the manner and intention of parties to a contract, as, for example, in the case of Robinson v. United States, 13 Wall. 363, 20 L. Ed. 653, where, in a contract for the purchase and sale of barley, the contract did not specify how the delivery should be made, proof was permitted which tended to show that the custom and usages in the locality were, upon the sale of barley, to deliver the same in sacks. In the case at bar, however, the manner of delivery was specified as to containers, and the question presented concerns the title to containers after the delivery, upon which subject the contract is silent, which in our opinion is distinguishable from the cited case.

Even should resort be had to the proofs of custom and usages in the case at bar, there are proofs on the part of the defendant that the containers in which oil is sold passes as an incident of the sale; while the plaintiff introduces proof tending to show that, where a sale is made in bulk, and delivery is to be made in containers, the price of the containers is added to the price of the commodity, which it is urged under the contract fairly interpreted was intended to be done here. So that, even if the evidence of custom and usages was considered, the court would still be in doubt as to which rule of custom and usages to adopt as applying to the circumstances. It is our conclusion, then, that under this contract, in the consideration of its terms upon the point involved, there is no ambiguity which will entitle the court to resort to parol evidence of custom and usages.

It is surprising how meager are the authorities either in court decisions or textbooks dealing with the subject of title to containers, although it is a common phase of everyday commercial transactions. There may be no doubt that as a general rule, in the ordinary small sale and delivery, a container upon the purchase of a commodity passes to the purchaser as an incident of the sale, as, for example, the sack in which 5 pounds of sugar is purchased at the grocery store. Counsel for defendant cite the cases of Texas Cotton Oil Co. v. National Cotton Oil Co. (Tex. Civ. App.) 40 S. W. 159, and Burr v. Williams, 23 Ark. 244. These cases concern the passage of title to commodities sold in sacks, and hold that the sacks passed to the purchaser as an incident of the sale. Here we have a sale transaction in which the container represents a substantial percentage of the value of the commodity which is contained therein for shipment and delivery. It can scarcely be assumed that the rule of a container passing with the commodity in which it is delivered should always obtain, as in some instances the container would be of more value than the commodity itself. Especially should this rule not be necessarily indulged in a case where it affirmatively appears that the commodity is sold at a certain price in bulk per gallon. Such a rule in the case at bar would seem to be lacking in equity.

In our view, the case may be more justly decided upon a consideration of the

evidence in regard to the action of the parties at the time the order was first placed for the delivery of the oil in drums. The plaintiff then stated to the defendant that the oil was being shipped with the understanding that the drums would be returned to plaintiff. While the defendant previously had taken the position that his contract called for the same price to him whether shipped in tank cars or drums, yet at no time did he state to the plaintiff that, if the oil were shipped in drums, it would be with the understanding that the drums belonged to defendant. The plaintiff's position was plain and unmistakable that it retained the title to the drums and required their return. If the defendant received the oil in drums upon this condition, which he undoubtedly did, the title to the drums did not pass to him. The title to the drums remaining in the plaintiff, the defendant, having failed to deliver them upon demand, is liable for their conversion.

For the reasons stated, the motion of the plaintiff for a directed verdict will be sustained and that of the defendants· will be overruled, reserving to them proper exceptions, and a judgment in favor of the plaintiff and against the defendants will be entered for the sum of $1,665.75, together with costs.

An appropriate journal entry may be prepared in accordance with this memorandum through collaboration of counsel.