RAMSEY et al. v. DEEPWATER OIL REFINERIES, Inc.

No. 737.

Circuit Court of Appeals, Tenth Circuit.
June 29, 1933.

Whit Y. Mauzy and James B. Coppedge, both of Tulsa, Okl. (John T. Harley, of Tulsa, Okl., on the brief), for appellants.

A. J. Biddison and Valjean Biddison, both of Tulsa, Okl. (Biddison, Campbell, Biddison & Cantrell, of Tulsa, Okl., on the brief), for appellee.

Civ. App.) 205 S. W. 381; Kuhlman v. Dickson (Tex. Civ. App.) 233 S. W. 338.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

In an action of trover appellee, as plaintiff, recovered a judgment against appellant for the value of certain steel drums in which it shipped to appellant lubricating oil. The defense set up is that the drums were delivered to defendant under written contract between the parties by the terms and conditions of which the drums became the property of appellant on their delivery. The contract provided that the appellee had sold and agreed to deliver all of the Texas Pale and Red Oils which appellant should require or have sale for in its business of selling and distributing lubricating oil for a period of three years, extending from May 1, 1930, to May 1, 1933.

"It is understood that First Party (appellee) has sold and agreed to deliver and Second Party has purchased and agreed to receive during the period stated a definite quantity of Texas Pale and Red Oils, such quantity to be arrived at and determined by the quantity which Second Party shall have need for or require or be able to sell in its said business during said period, and in this connection it is understood that Second Party has purchased and shall take a minimum quantity of 300,000 gallons of said oils during said three-year period, said quantity to be divided into three fairly equal annual amounts; that is to say, Second Party shall be required to receive and pay for. and the First Party will furnish approximately a minimum of 100,000 gallons of oil per year to Second Party under this contract."

Prices per gallon for the different oils were then stated.

"Oils to be of First Party's manufacture.

"It is understood that all of the foregoing prices are F. O. B. cars at First Party's plant in Houston, Texas, shipments to be made in tank car lots or in barrels; but if shipped in barrels, not less than carload lot."

The contract further provided that the prices named per gallon were based upon and arrived at by taking the then posted price of Coastal A Crude Oil at $1.15 per barrel, and that they be changed up or down as that posted price might be more or less thereafter. The contract also contained this:

"A wood barrel shall be from 47 to 52 gallons; a metal half barrel shall be 30 gallons, a metal barrel shall be from 50 to 55 gallons, a tank car, when not otherwise specified, shall be 8,000 gallons."

The contract was executed on May 7, 1930. Thereafter, until October, all shipments were made in tank cars. The contract provided that the appellant shall at once bill and route the tank cars when unloading was completed "as the First Party (appellee) may direct." On October 8, 1930, appellant sent to appellee this telegram:

"Ship us rush thirty drums three hundred Green Cast thirty five drums five hundred Green Cast to apply on contract."

Appellee wired back in answer:

"Retel shall we use new drums or second hand drums stop New drums seven cents per gallon above bulk price and second hand drums five cents per gallon above bulk price."

Appellant replied:

"Contract shows same price for bulk and drums Use new or good used."

Appellee answered back:

"Because you ordered in drums we assume you wanted to purchase drums thus our telegram of October ninth quoting prices of drums We understand by your answer you do not want to purchase drums so are shipping oil as per your order and at bulk prices under contract and request return of empty drums within thirty days freight prepaid to Houston, Texas."

Appellee then filled the order by shipping in drums, and thereafter other orders of like kind, appellant insisting throughout that the drums when shipped became the property of the buyer, and appellee insisting that they did not and that the drums should be returned. In filling an order for shipment in drums in November appellee wrote appellant:

"This material is being loaded in our reconditioned drums, which are to be returned to us at Houston, Texas, within 30 days from date of invoice, freight charges prepaid."

To this appellant replied:

"We beg to advise that this acknowledgment is not in accordance with our May 7th, 1930, contract with you. This contract requires us to return empty tank cars on billing furnished by you, but makes no provision for the return of empty drums."

Finally in correspondence the parties agreed that their respective contentions as to the drums would not be affected by the acceptance of orders by appellee, and that shipments were to be made without prejudice to their respective claims to right and title to the drums. Appellant retained the drums and refused on demand to deliver them to appellee, hence this suit.

After each party had introduced testimony and rested, each moved for a directed verdict in its favor, stipulated in open court that all issues of fact might be determined by the judge, and the jury was discharged. Thereupon the court found that the value of the 55 gallon drums was $1.15 each, and the 30 gallon drums eighty-five cents, but took all the other matters in issue under advisement, and later decided them in favor of appellee, and entered the judgment. The District Judge wrote an opinion in which he discussed fully the facts of the case and the principles of law applicable thereto, as he conceived them, and gave his reasons for the conclusion reached. See, Deepwater Oil Refineries v. Ramsey (D. C.) 59 F.(2d) 346.

We think it sufficient to say there was no prejudicial and reversible error in the trial proceedings.

Each party claims that the contract justified his position and contention: Appellant, that the drums became his property; appellee, that title to the drums did not pass to the buyer, but remained its property. The clause of the contract involved is:

"It is understood that all of the foregoing prices are F. O. B. cars at First Party's plant in Houston, Texas, shipments to be made in tank car lots or in barrels. * * * "

The prices named in the contract to be paid by the buyer are solely for the oil at a per gallon rate. There is no language anywhere to be found that discloses an intention on the part of the seller to dispose of anything but the oil. The proof shows that the drums were usable over and over again for such shipments and had a substantial value of their own. The witnesses were not in agreement as to the price or value of such drums, except new ones. The parties relied on their telegrams when appellant made its first order for shipment in drums. It also plead a common custom and usage to the effect that when oil is sold and delivered in drums, nothing being said about the drums, title to the drums passes to the purchaser. Appellant in its defense undertook to sustain that trade usages and common custom, and introduced witnesses familiar with the business who testified to that effect, but the question propounded by appellant's counsel in attempting to establish that usage confined the inquiry to a single sale of oil in drums. He did not submit to the witnesses the phrase quoted supra from the contract. Appellee's witnesses on that subject, also experienced in the oil business, were given in substance the terms of the contract on that subject, and were then asked whether under a contract providing as this one does, that shipments were to be made in tank car lots or in barrels, there was a usage or custom by which title to the drums would pass to the buyer. They answered in the negative. More than one of them said that it would be unreasonable and unfair to a seller that he should deliver oil in tanks or drums at the same price and the buyer retain as his property the drums, where the drums had a substantial value in and of themselves, and that there was no usage and custom sustaining such a claim by the buyer. There was testimony that where shipments are in usable steel drums, if the buyer is to retain the drums, the oil is invoiced at a price high enough to cover the drum, and that under the clause supra from the contract the prices quoted in the contract as the selling prices would be taken by the trade as the base price, and if shipments should be made in drums as therein provided might be done, the buyer would not get the drum where he paid only the base price for the oil. One of plaintiff's witnesses on the subject of usage and custom, when cross-examined by defendant's counsel, said no one ever adopted the practice of shipping oil in drums and in tank cars at the same price, if the buyer was to retain the drums, that to do so would put the seller out of business. It may be doubted whether the testimony for either side established a general usage and custom covering the situation in this case in view of the provisions of the contract, but it seems plain that the buyer's contention is unfair and unjust. The contract did not specify which of the parties had the right to designate whether shipments were to be made in tank cars or in drums. Had all of the oil been shipped in tank cars and the contract price paid there would have been full performance. Appellant concedes he had no right to retain the tank cars. Why then should it be held that the buyer had the right to demand that shipments be in drums and thus obtain from the seller title to the drums in addition to the oil sold to him? The unjust and unfair claim of the buyer cannot be accepted as within the intention of the parties to the contract. In Pressed Steel Car Co. v. Eastern Ry. Co. (C. C. A.) 121 F. 609, 611, the court said:

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would

naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract."

On the same point, see A. Leschen & Sons Rope Co. v. Mayflower Co. (C. C. A.) 173 F. 855, 35 L. R. A. (N. S.) 1. In Utley v. Donaldson, 94 U. S. 29, 46, 24 L. Ed. 54, the Supreme Court quoted with approval from an opinion by the New York Court of Appeals (Hoffman v. Ætna Fire Ins. Co., 32 N. Y. 405, 88 Am. Dec. 337) this:

"Every intendment is to be made against the construction of a contract under which it would operate as a snare."

But we really need not go so far. The trial court made a general finding in favor of appellee.

"The established rule is: 'Where both parties request a peremptory instruction and do nothing more they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom.' And upon review a finding of fact by the trial court under such circumstances must stand if the record discloses substantial evidence to support it." Williams v. Vreeland, 250 U. S. 295, 298, 39 S. Ct. 438, 439, 63 L. Ed. 989, 3 A. L. R. 1038.

See, also, McFarland v. Central Nat. Bank (C. C. A. 8) 26 F.(2d) 890.

Judgment affirmed.