**VERKAMP CORP. v. ST. MATTHEWS GAS & ELECTRIC SHOP, Inc.**

Civ. No. 2163.

United States District Court
W. D. Kentucky, at Louisville.
Sept. 19, 1952.

James W. Stites, T. Kennedy Helm, Jr. and Doolan, Helm, Stites & Wood, Louisville, Ky., for plaintiff.

Henry J. Burt, Jr., Robert P. Hobson and Woodward, Hobson & Fulton, Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The complaint filed by the Verkamp Corporation July 12, 1951, seeks recovery from the defendant St. Matthews Gas & Electric Shop, Inc., of (1) $5,185, the alleged reasonable value of 305 propane gas cylinders belonging to plaintiff and allegedly wrongfully withheld from it by the defendant; (2) the

sum of $10,014.42, as damage for the wrongful retention of the cylinders and, (3) the further sum of two cents a day per cylinder from June 1, 1951 "on all cylinders not heretofore returned to complainant until the same are returned."

The case was tried to the Court without a jury on November 13, 1951. At the conclusion of the trial, counsel requested time for preparation of briefs.

The Court now makes the following—

## Findings of Fact

1. Plaintiff, the Verkamp Corporation, is a corporation, created under the laws of the State of Ohio and was engaged in the business of distributing Philgas, a liquefied petroleum gas, at wholesale and retail; defendant, St. Matthews Gas & Electric Shop, Inc., is a Kentucky corporation, engaged in the business of selling and distributing liquefied petroleum gas at retail. The amount in controversy exceeds, exclusive of interest and cost, the sum of $3,000.

2. From 1936 to June 30, 1949, plaintiff sold gas to the defendant, which gas was resold by the defendant at retail, at a profit, to consumers. During this period, there was no written agreement.

Defendant located and secured the consumer and delivered to him the gas purchased from the plaintiff in steel cylinders. The cylinders were property of the plaintiff and were identified with plaintiff's name or initials.

The agreement between the parties hereto was that plaintiff would supply defendant with cylinders on condition that defendant agreed to purchase its gas from the plaintiff.

3. Under this agreement, plaintiff furnished to the defendant a supply of cylinders and no charge was ever made by the plaintiff for the defendant's use of such cylinders.

From 1941 until the termination of the contract, on June 30, 1949, defendant purchased a major portion of the gas which it sold from the plaintiff. The gas was purchased in bulk in truckload lots and during all of that time defendant used the cylinders, which it from time to time acquired from the plaintiff. The custom was for plaintiff to replace damaged or lost cylinders when requested by defendant and additional cylinders were furnished from time to time by plaintiff, upon defendant's request.

4. The agreements between the defendant and the customers were upon printed forms furnished by plaintiff. Said agreements, by their terms, were between plaintiff and the consumer, with defendant named as "Dealer".

By the terms of the agreement, the equipment (cylinders) remained the property of plaintiff and were not to be delivered to or moved by any one other than plaintiff's agents. When such agreements were executed, notice of the initial installment of gas was given to plaintiff by the defendant. All dealings under the agreements were carried on between defendant and the consumer. The custom was when a consumer desired a new cylinder of gas, he notified defendant and the latter replaced the empty cylinder with a full one, and collected for such replacement.

There is no evidence that defendant made any investigation or check to determine the cause or reason when a cylinder was out of circulation an unusual length of time. No specific charge was made for the use of the cylinder. Defendant's agents estimate that the average cylinder was "turned over" twice each year.

5. No record was kept by plaintiff of the whereabouts of cylinders and no such record was required of defendant by plaintiff. Plaintiff, however, kept such records in the form of inter-office postings and invoices when it furnished cylinders to defendant. Copies of the invoices were sent to defendant when and as the cylinders were furnished, but no copy of the inter-office postings was furnished to defendant. There is no evidence or any record in the case from either party prior to August 1, 1949, evidencing the return of any cylinders to plaintiff by defendant.

6. October 30, 1942, defendant delivered to plaintiff, an official form report, for the War Production Board, showing that defendant had then in its possession 1,778 one hundred pound cylinders and forty-two sixty pound cylinders. Plaintiff's records

from April 29, 1943 to December 16, 1948, show delivery to defendant of 1,175 empty one hundred pound cylinders.

7. The agreement between the parties was voluntarily terminated by the defendant June 30, 1949. Prior to this termination, in April 1949, the parties agreed that in the event of termination of the contract, defendant was to return plaintiff's cylinders, at such time as a truckload had been received by it from the consumers. A truckload consisted of 160 to 163 cylinders. This practice was followed after the termination of the contract.

A reasonable period of time within which all of plaintiff's cylinders should have been returned to plaintiff was January 1, 1950.

8. Defendant, between August 1, 1949, and February 28, 1951, returned to plaintiff 2,707 one hundred pound cylinders and 33 sixty pound cylinders. Defendant had in its possession at the time of the trial 18 one hundred pound cylinders and 1 sixty pound cylinder returned to it by consumers after February 28, 1951.

9. January 1950, defendant had returned to plaintiff 2,426 cylinders and returned to plaintiff thereafter 162 cylinders on February 21, 1950 and 152 cylinders February 28, 1951.

10. November 13, 1951, the date of the trial, there remained not returned to the plaintiff 244 one hundred pound cylinders and 9 sixty pound cylinders.

On February 28, 1951, defendant informed plaintiff that it had completed the return of all of plaintiff's cylinders.

11. Between February 28, 1951, and November 13, 1951, defendant collected from its customers 18 one hundred pound cylinders and 1 sixty pound cylinder belonging to plaintiff, so that after giving defendant credit for these cylinders, there remains 226 one hundred pound cylinders and 8 sixty pound cylinders not accounted for by defendant.

12. The reasonable market value of a one hundred pound cylinder at the time of the trial was $16.35, and the reasonable market value of a sixty pound cylinder on that date was $13.35.

## Conclusions of Law

I. The Court concludes that it was the duty of the defendant to return to plaintiff or account for the value of cylinders which were furnished to it by the plaintiff and that six months after June 30, 1949, was a reasonable time after the termination of the contract for defendant to account to plaintiff for all of the cylinders theretofore received by it.

Defendant contends that the agreement between them went no further than to hold defendant responsible to plaintiff for cylinders while they were physically in defendant's custody.

In the case of Ramsey v. Deepwater Oil Refineries, 10 Cir., 65 F.2d 931, 933, the Court quoted with approval the following from Pressed Steel Car Company v. Eastern Railway Company, 8 Cir., 121 F. 609:

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract."

In the Ramsey case, there were involved steel drums used to deliver oil to defendant. Defendant contended that title to the drums passed to it upon the sale of the oil; plaintiff contending that title to the drums remained in it with an obligation on defendant to return the drums. Analyzing all of the surrounding circumstances, the Court concluded that plaintiff was entitled to the drums, because the actions of the parties during their trade relations indicated that any other contract would be "an unusual, unfair, or improbable contract."

II. Therefore, in this case, plaintiff is entitled as a matter of law, to the return of all of the cylinders belonging to it which

were in the hands of the defendant or in the possession of defendant's customers on January 1, 1950, six months after defendant had terminated the contract.

Plaintiff is entitled to a return of the cylinders or a recovery in money of the reasonable value of 226 one hundred pound cylinders and 8 sixty pound cylinders.

III. Because the evidence in this case convinces the Court that defendant did not actually have the physical possession of the cylinders at the time of the trial and had not intentionally used them in supplying gas which it had not purchased from the plaintiff to its customers, the Court disallows plaintiff's claim for damages for the alleged wrongful retention of the cylinders or for a daily rental.

Plaintiff will prepare and submit a judgment, adjudging it the owner of and entitled to the immediate possession of 226 one hundred pound cylinders of the value of $16.35 each and 8 sixty pound cylinders of the value of $13.35 each and for its costs in this action expended.